**Sharon DE LATER, formerly Sharon Hudak, Appellant-Respondent,**

v.

**Paul HUDAK, Appellee-Petitioner.**

**No. 3–179A28.**

Court of Appeals of Indiana, Fourth District.

Jan. 31, 1980.

George T. Patton, South Bend, for appellant-respondent.

Timothy P. McLaughlin, Smith & McLaughlin, South Bend, for appellee-petitioner.

CHIPMAN, Judge.

Sharon DeLater, formerly Hudak, appeals from a garnishment of wages order entered in favor of her ex-husband, Paul Hudak. This order came as a result of a proceedings supplemental commenced by Paul and based initially on a part of the dissolution decree requiring Sharon to pay the balance of a debt owing to FBT Capital Corporation. When Sharon failed to pay this joint indebtedness FBT garnisheed Paul's wages and he subsequently brought a proceedings supplemental against Sharon.

The issues raised are:

1. Was there a valid judgment in favor of Paul against Sharon upon which the court could issue a garnishment order as to her wages in a proceedings supplemental?

2. Was there evidence to support the proceedings supplemental garnishment order in the sum of $766.63?

3. Was the discharge of Sharon in bankruptcy as to the FBT debt available to her as a special defense in the proceedings supplemental brought by Paul?

We reverse.

## FACTS AND CASE SUMMARY

Sharon and Paul lived together for a period of time before their marriage which occurred on November 27, 1975. In September, before their marriage, they jointly executed a promissory note to FBT. The parties separated in September of 1976 and shortly thereafter Sharon filed a bankruptcy proceeding and listed among her debts the FBT obligation. On December 16, 1976, she was granted a discharge by the bankruptcy court.

Paul filed a petition for dissolution of the marriage on September 23, 1976, and the court dissolved the marriage on April 19, 1977, with the question of property rights to be later incorporated in a final decree. The court entered this decree on May 3, 1977 and one of its provisions required Sharon to pay the balance of the FBT debt and to hold Paul harmless as to this obligation.

Sharon did not make any payments to FBT and this ultimately resulted in a garnishment of Paul's wages by FBT. On March 15, 1978, he filed a verified application to institute supplementary proceedings stating:

Petitioner is the owner of a Judgment against the respondent rendered in this case on the 3rd day of May, 1977, which Judgment in part, states:

'And now the Court orders the respondent, Sharon Hudak, to pay the obligations of the parties to FBT Capital Finance Company'.

Said Judgment further states that the respondent shall hold harmless the petitioner as to any payments he may be required to make upon said obligation.

The respondent has failed and refused to obey said Judgment and the petitioner's wages to date have been garnished in the sum of $373.68 by FBT Capital Finance Company.

Petitioner has no cause to believe that levy of execution against the respondent will satisfy the Judgment.

Petitioner demands that the respondent be ordered to appear before the Court to answer against her nonexempt property subject to execution.

A hearing on this petition was held on March 27, 1978, with Paul and his attorney present, as well as Sharon's attorney. Briefs by counsel were later filed and the following is the pertinent portion of the court's subsequent entry on April 3, 1978.

. . . . .

And now the Court grants the application to institute Supplementary Proceedings and finds that the petitioner herein, Paul Hudak, has had wages at Mastic Corporation garnished to the extent of $766.63 on an account of the F.B.T. Capital Corporation debt which was the subject of the Court's decree of dissolution herein ordering respondent to pay same or to hold the petitioner harmless.

And now the Court's ruling is based on the fact that the respondent was discharged in bankruptcy in December of 1976 which was prior to this Court's order of May 3, 1977.

. . . . .

And now in addition, the Court ordered that the parties save each other harmless from the debts which the Court ordered them to pay respectively.

Paul filed a verified motion and proceedings supplementary on May 5, 1978, stating he owned a judgment against Sharon which was recovered on April 3, 1978, and in the sum of $766.63. On July 18, 1978, the court entered a final order of garnishment against Sharon's wages from her employer RACO, Inc. for $808.21. This order was subsequently set aside by the court on August 3, 1978, and immediately Paul filed

another verified motion in proceedings supplementary again stating he owned a judgment against Sharon dated April 3, 1978, in the sum of $766.63. Sharon filed a verified answer denying Paul owned such a judgment. The court entered its final order against Sharon and RECO, Inc. on October 30, 1978, and this appeal follows.

## I. Validity of Judgment as to Subsequent Garnishment Order

█ Sharon argues strenuously that Paul was not the owner of a judgment entered on April 3, 1978, for $766.63 which would form the basis of a subsequent garnishment order in favor of her ex-husband. Paul admits the dissolution decree of May 3, 1977, as it applied to the FBT debt, was executory in form and was not enforceable by way of a proceedings supplemental until it was reduced to a sum certain but then contends the court reduced the May 3, 1977, decree to the sum of $766.63 by its action of April 3, 1978. Hence, there was a valid judgment upon which the court could enter its final garnishment order of October 30, 1978. We disagree.

We have carefully examined the record provided and conclude there was no evidence submitted on April 3, 1978, to substantiate a judgment of $766.63. In fact, Paul's verified application filed March 15, 1978, states his wages "to date have been garnished in the sum of $373.68 by FBT Capital Finance Company."

In examining the entry made by the court on April 3, 1978, we conclude this was merely a finding that was never reduced to a judgment. Indiana Rules of Procedure, Trial Rule 69(E) provides:

Proceedings supplemental to execution. Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by a verified motion or with affidavits in the court where the judgment is rendered alleging generally

█ that the plaintiff owns the described judgment against the defendant . . .

Obviously the rule anticipates that prior to the granting of a final order in the proceedings supplemental a valid judgment must be entered against the defendant and in the case before us this did not occur.

## II. Sufficiency of Evidence

█ The record in this case contains many irrelevant documents and court entries not even remotely germane to the appeal, but the two hearings which might establish facts to support the findings of April 3, 1978, as to the sum of $766.63 are devoid of any such information. The first hearing occurred on March 27, 1978, and the entire record reads as follows:

### PROCEEDINGS

With the Judge J. Chester Allen, Jr., on the bench and the parties present in person and by their counsel, as heretofore indicated, the hearing proceeded as follows:

THE COURT: Let the record show the petitioner appears in person and with his counsel. Respondent appears by Attorney George Patton. Comes now the petitioner and withdraws rule to show cause heretofore filed on October 18, 1977. Hearing is had on the proceedings supplementary filed by the petitioner herein and now the Court orders that any briefs which the parties wish to file herein shall be filed on or before the 30th day of March, 1978. And now this matter is continued and the hearing is continued to the 3rd day of April, 1978, at 9:00 a.m.

The second hearing was held on April 3, 1978, with only the attorneys present and the only evidence submitted was the verified answer of Sharon. We have previously pointed out this merely set forth her claim that Paul was not the owner of a judgment.

We agree with Sharon's contention that there was a lack of evidence to support even the finding of the court that Paul's wages had been previously garnisheed in the sum of $766.63. What is further confusing is Paul's verified application to institute supplementary proceedings filed approximately three weeks before the hearing of April 3, 1978, states that his wages had been garnisheed by FBT in the total sum of $373.68.

## III. Bankruptcy Discharge as a Special Defense

Even though we have reversed this cause based on the first two issues, we will address the third issue raised by appellant since it will probably arise in further proceedings. Sharon contends her discharge in bankruptcy prior to the dissolution relieved her of any responsibility she might have had as to the FBT debt. We conclude this issue cannot properly be raised at this time since it is a collateral attack on the dissolution decree of May 3, 1977.

Even though proceedings supplemental are an extension of the underlying action, the parties cannot during their course collaterally attack the underlying judgment. "The TR 69 petition speaks only to *how* the claim is to be satisfied, whereas the complaint in the original action speaks to *whether* the claim should be satisfied." *Citizens National Bank of Grant County v. Harvey*, (1976) Ind.App., 339 N.E.2d 604, 609:

> Generally, a party to a judgment may not collaterally attack the final judgment of a court of competent jurisdiction when the record is regular on its face. . . . Where a court has jurisdiction of the subject matter and of the person of the defendant, and it renders a judgment not in excess of the jurisdiction or power of the court, no judgment it may render within the issues is void, however erroneous it may be. . . . *Koepke v. Hill* (1901), 157 Ind. 172, 60 N.E. 1039.

*State v. Dossett*, (1977) Ind.App., 368 N.E.2d 259, 262.

This is equally true here even though the issue of discharge in bankruptcy was not actually litigated. It is sufficient that it could have been litigated.

> [A] prior judgment is conclusive not only as to matters actually litigated, but also as to issues which could have been litigated in the action. This was stated by the Supreme Court in *McIntosh v. Monroe* (1953), 232 Ind. 60, 111 N.E.2d 658, 660, quoting from *Wright v. Anderson* (1889), 117 Ind. 349, 20 N.E. 247:
>
> 'An adjudication once had between the parties bars and cuts off all future litigation, not only as to what was actually litigated and determined, but as to all matters that might have been litigated and determined in the action. This is the established doctrine of this court from the beginning.'

*Matter of Estate of Apple*, (1978) Ind.App., 376 N.E.2d 1172, 1176.

During the dissolution proceedings the issue of the FBT debt and Sharon's discharge in bankruptcy could have properly been before the trial court. However, Sharon did not raise the issue. Judgment was entered and no appeal on the merits was taken after the court denied Sharon's motion to correct errors. Sharon is thereby bound by that judgment.

Reversed and remanded for further proceedings.

MILLER, P. J., and YOUNG, J., concur.