**Vicente Acevedo VELEZ et al.,
Plaintiffs-Appellants,**

v.

**CROWN LIFE INSURANCE CO.,
Defendant-Appellee.**

No. 78–1269.

United States Court of Appeals,
First Circuit.

Argued Feb. 8, 1979.

Decided May 31, 1979.

Luis M. Chaves Ghigliotty, Arecibo, P. R., for plaintiffs, appellants.

Eugene F. Hestres, San Juan, P. R., with whom Bird & Bird, San Juan, P. R., was on brief, for defendant, appellee.

Before CAMPBELL and BOWNES, Circuit Judges, JAMESON, District Judge.*

BOWNES, Circuit Judge.

This case presents questions as to diversity jurisdiction under 28 U.S.C. § 1332(c) and amount in controversy jurisdiction, 28 U.S.C. § 1332(a), as well as the basic issue of coverage under a group life insurance policy.

Plaintiff-appellant Vicente Acevedo Velez commenced suit in the Superior Court of Puerto Rico to recover from Crown Life Insurance Co., defendant-appellee, insurance payments for the death of his father, Emilio Acevedo Iguina, who died on December 18, 1972. The complaint asked the court "to order the defendant to pay to the plaintiff the sum of $10,000 plus interest at the rate of six per cent per annum from December 18, 1972, until the date of total payment, plus costs, expenses and $1,500.00 for attorney's fees." The case was then removed to the District Court of Puerto Rico,[1] which denied a motion to dismiss for lack of jurisdictional amount. It held that the amounts claimed for attorney's fees and "survey expenses" (adjustment and investigation fees)[2] should be included in determining the jurisdictional amount. Cross-motions on the main issue of insurance coverage were subsequently filed and a different district court judge found there was no liability on the part of appellee and entered judgment accordingly.

The issues of diversity jurisdiction and interest as part of the jurisdictional amount do not seem to have been raised below, but, since jurisdiction is a threshold determination which cannot be waived, we must treat them here. *Mansfield, Coldwa-*

---

* Of the District of Montana, sitting by designation.

1. The complaint was subsequently amended to include plaintiff's mother and widow of Acevedo Iguina as a plaintiff and to ask for attorney's fees in the amount of $2,000.

2. The question of the includibility of survey expenses was neither briefed nor argued before us and, since its resolution is not necessary on the question of jurisdiction, we do not discuss it.

ter & Lake Michigan Railway Company v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884). See also Fed.R.Civ.P. 12(h)(3).

## JURISDICTION

### A. Diversity of Citizenship

■ Appellants claim that there is no diversity of citizenship because of the provisions of 28 U.S.C. § 1332(c).[3] The statute clearly does not apply to this situation. In White v. United States Fidelity and Guaranty Company, 356 F.2d 746 (1st Cir. 1966), we examined the legislative history of this statute and pointed out that Congress enacted this amendment specifically to eliminate from diversity jurisdiction tort claims in which both parties are local residents, but, which under a state direct action statute, are brought against a foreign insurance company without joining the local insured as a defendant. Id. at 747. We noted: "The report then makes clear that the words 'direct action' were used to refer to statutes such as those in Louisiana and Wisconsin which allow a party injured by the negligence of an insured to pursue his right of action against the insurer alone." Id. at 747–48.[4] In this case, the insurance company defendant was the one who was allegedly liable for failing to meet its obligations under the insurance contract with the deceased's employer, not, as under the statute, merely the payor of a judgment based on the negligence of one of its insureds. Since appellee was at the time of suit a Canadian corporation (and still is), there was diversity jurisdiction.

---

3. The statute reads, in pertinent part:

(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: *Provided further*, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

### B. Amount In Controversy

#### Interest

■ Interest is specifically excluded under the words of the statute[5] and the established rule is that it is not to be included as part of the jurisdictional amount.

> The court dismissed for lack of the jurisdictional amount. 28 U.S.C.A. § 1332(a). This was correct. When the statute requires that the amount in controversy "exceeds the sum * * * of $10,000, exclusive of interest and costs * * *" it makes no difference whether the interest which is sought accumulated upon the principal obligation sued upon because of contract, or by common law, or by statute, or whether the interest be termed a penalty or damages, so long as it is an incident arising solely by virtue of a delay in payment. *Merrigan v. Metropolitan Life Ins. Co.*, D.C.E.D.La.1942, 43 F.Supp. 209; *Reynolds v. Reynolds*, D.C.W.D.Ark. 1946, 65 F.Supp. 916; see *City of Pawhuska, Okl. ex rel. Graham v. Midland Valley R. Co.*, 8 Cir., 1929, 33 F.2d 487.

*Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir. 1972). See also *Rafter v. Newark Insurance Company*, 355 F.2d 185 (2d Cir.), cert. denied, 385 U.S. 828, 87 S.Ct. 60, 17 L.Ed.2d 63 (1966); 14 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 3712 and cases cited thereunder.

■ Nor does this case fall within the line of cases starting with *Brown v. Webster*, 156 U.S. 328, 15 S.Ct. 377, 39 L.Ed. 440 (1895), holding that where interest is an

---

4. Puerto Rico also has such a direct action statute. See *Maria Rivera Torres v. Hartford Insurance Company*, 588 F.2d 848 (1st Cir. 1978), holding in an automobile accident case "that the insurer is deemed to be a citizen of the same state as the plaintiff if either the *named* insured or the tortfeasor *omnibus* insured is a citizen of that state." Id. at 850 (emphasis in original).

5. Section 1332.

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs[.]

integral part of the damages at the time the claim arose, it is to be included in computing the jurisdictional amount. In *Brown*, the Court drew a distinction "between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand." *Id.* at 329, 15 S.Ct. at 377. *See also Brainin v. Melikian*, 396 F.2d 153 (3d Cir. 1968), where the Third Circuit relied on *Brown* in holding that in an action based on nonpayment of a note, interest specified in the note during the period before maturity was to be included as part of the jurisdictional amount. There is nothing in the insurance policy here calling for the payment of interest. The interest claimed cannot be included as a part of the jurisdictional amount because it is incurred only because of the delay in payment and is incidental to the main amount claimed. *Regan v. Marshall, supra*, 309 F.2d 677.

### Attorney's Fees

■ As a general rule, attorney's fees are excludable in determining the matter in controversy because, normally, the successful party does not collect his attorney's fees in addition to or as part of the judgment. 1 Moore's Federal Practice 0.99[2]. There are, however, two logical exceptions to this rule: one, where the fees are provided for by contract,[6] and, two, where a statute mandates or allows the payment of such fees, *Missouri State Life Insurance Co. v. Jones*, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933); *People of Sioux County, Nebraska v. National Surety Company*, 276 U.S. 238, 48 S.Ct. 239, 72 L.Ed. 547 (1928); *Nathan v. Rock Springs Distilling Co.*, 10 F.2d 268 (6th Cir. 1926); *Walker v. Paradise Taxicabs, Inc.*, 202 F.Supp. 469 (D.C.P.R. 1962).

In *Batts Restaurant, Inc. v. Commercial Insurance Co.*, 406 F.2d 118, 120 (7th Cir. 1969), this rule was applied to a statute that permitted a fee award against an insurance company whose refusal to settle an insurance claim was "vexatious and without reasonable cause." The attorney's fees here are sought pursuant to a similar Puerto Rican statute and the Rules of Procedure of the Superior Court for the Commonwealth.[7] We have recognized that the statute and the rules are part of the substantive law of Puerto Rico and have allowed attorney's fees thereunder in diversity cases. *Jose Morales Sanabria v. International Longshoremen's Association Local 1575 and Guillermo Ortiz*, No. 78–1294, 597 F.2d 312 (1st Cir. May 4, 1979); *Pan American Airways, Inc. v. Ramos*, 357 F.2d 341, 342 (1st Cir. 1966). Fees claimed under this statute were recognized as part of the amount in controversy by Judge Magruder, former Chief Judge of this circuit, when he sat as district judge in *Walker v. Paradise Taxicabs, Inc., supra*, 202 F.Supp. at 470:

> With respect to the issue of the existence of the requisite jurisdictional amount "where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs," 28 U.S.C. § 1332(a), it seems to be settled that the amount of an attorney's fee demanded for services in this proceeding pursuant to a Puerto Rican statute, 32 L.P.R.A. 1461, is not "costs" within the meaning of the jurisdictional act, but should be added to the principal sum sued for in determining the amount in controversy.

We think this conclusion was correct. As the pleadings do not show to a legal certainty that the amount claimed could not be

---

6. *Springstead v. Crawfordsville State Bank*, 231 U.S. 541, 34 S.Ct. 195, 58 L.Ed. 354 (1913); *Premier Industrial Corp. v. Texas Industrial Fastener Co.*, 450 F.2d 444 (5th Cir. 1971).

7. P.R. Laws Ann. tit. 32, § 1461(6):

"... In case any party has acted with obstinacy, the court shall impose in its judgments the payment of attorney's fees of the other party, fixing it therein the amount of

such fees, with due regard to the degree of guilt in suit and the work necessarily done by the counsel of the other party . . ."

Rule 44.4(d) of the Puerto Rican Rules of Civil Procedure:

"d) Attorney's fees. Where a party has been obstinate, the court shall in its judgment impose on such person the payment of a sum for attorney's fees.

established, *see Jimenez Puig v. Avis Rent–A–Car System*, 574 F.2d 37, 39 (1st Cir. 1978), jurisdiction was properly accepted.

## THE MERITS

The facts are uncontroverted, brief, and simple. On August 16, 1972, the Treasury Department of the Commonwealth of Puerto Rico, on behalf of the Puerto Rico Urban Renewal and Housing Corporation (CRUV), issued an invitation to bid on a group life insurance policy. Appellee, through local agents, submitted a proposal for a policy covering all full-time employees of CRUV. This proposal was accepted in November of 1972 and appellee issued a group policy on July 29, 1973, retroactive to December 1, 1972, covering all of CRUV's full-time employees. The first premium was paid on November 30, 1972.

Emilio Acevedo Iguina started full time employment with CRUV on December 1, 1969, and worked regularly until October 5, 1972, when he was granted a leave of absence due to illness until December 13, 1972. After his sick leave expired, his status was changed from sick leave to paid vacation leave. Acevedo Iguina was in the hospital from November 19, 1972, with bronchial pneumonia, until his death on December 18, 1972.

The implicated provisions of the group policy provide:

## "ELIGIBILITY

"Employees of the employer in the classification specified in the BENEFIT SCHEDULE of this policy who are employed on a full-time and full-pay basis shall become eligible for insurance under this policy as described below, except that *an employee who is absent from work on the date he otherwise would become eligible shall not become eligible for such insurance until the date he returns to work on a full-time and full-pay basis*" (emphasis added).

## "EFFECTIVE DATES

"An eligible employee's insurance under this policy shall become effective as described below, *except that if an employee is absent from work on the date any of his insurance under this policy otherwise would become effective, such insurance shall not become effective until the date he returns to work on a full-time and full-pay basis*" (emphasis added).

## "DEFINITIONS
WHEN USED IN THIS POLICY EACH TERM IS LIMITED IN MEANING TO THE DEFINITION SHOWN

| | |
|---|---|
| EMPLOYED OR EMPLOYMENT | Employed or employment by the employer on a permanent, active, full-time and full pay basis. |
| FULL–TIME AND FULL–PAY BASIS | A basis of employment which requires the employee to be at work for at least 30 hours per week either at the usual place of business of the employer or at a location to which the business of the employer requires the employee to travel, and for which he receives regular earnings from the employer. |
| AT WORK | Actually present at the location where the employee is employed on a full-time and full-pay basis. An employee whose absence from work on any day is due solely to the fact of it being a statutory holiday or a day of his paid vacation shall be considered to be at work on such day for the purpose of this definition." |

Since Acevedo Iguina was absent from work due to illness on the effective date of the policy, December 1, 1972, and never returned to work at all, he was expressly excluded from coverage. Recognizing this, appellants argue that the terms and conditions of the invitation to bid and the bid proposal determine the question of coverage. Even though this approach ignores the time-tested principle of contract and insurance law that the terms of the policy are controlling, it avails appellants nothing. The pertinent provision of the invitation to bid issued on August 16, 1972, states: "The plan shall cover the Puerto Rico Urban Renewal and Housing Corporation employee [*sic*]. New employee [*sic*] are not *subject to waiting period*" (emphasis in original).

Appellees' proposal contains the following paragraph.

> Present employees will be eligible on the effective date of the plan and future employees will be eligible upon the date of their employment on a full time basis. *If an employee is not actively at work on the date he would normally become eligible for insurance, he will become eligible for benefits upon return to active full time work* (emphasis added).

Clearly, this does not contradict the terms of the policy. Nor is this a situation where it can be argued rationally that the insured was at work when the proposal was accepted. The proposal was not accepted until November and the first premium paid on November 30. The insured stopped working because of illness on October 5. Eligibility provisions of the kind involved here are not unusual in group life insurance policies. The purpose, obviously, is to limit the policy to those who are healthy enough to be employed full time and to exclude those who are unable to work regularly on the effective date of the policy. Under the terms of the bid proposal and the policy, Acevedo Iguina was not eligible for insurance. *Elsey v. Prudential Insurance Company of America*, 262 F.2d 432 (10th Cir. 1958).

*Affirmed.*