774 F.2d 433
 JOHN COOPER PRODUCE, INC., d/b/a Hi-C Produce & Truck
Brokers, Plaintiff-Appellant,
v.
PAXTON NATIONAL INSURANCE COMPANY; S. Clayton Callaway
Agency; Palmer and Company Insurance, Inc.,
Defendants-Appellees.
 Nos. 84-7760, 85-7151
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 18, 1985.
 
 John W. Cooper, Valley Head, Ala., for plaintiff-appellant.
 Curtis Wright, Gadsden, Ala., for Clayton Callaway Agency.
 James C. Inzer, III, Gadsden, Ala., for Paxton Nat. Ins. Co.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before FAY, JOHNSON and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 The appellant brought this action against the appellees as insurers for the loss of a truckload of chickens shipped at the direction of appellant by a driver who had applied for cargo insurance through appellees. Neither the driver nor the chickens have since been heard from and appellees have refused appellant's demands for payment under the insurance policy. Appellant challenges the action of the district court, directing a verdict for the appellees, on the grounds of no diversity to support jurisdiction. Appellant also challenges the denial of relief by the court below. We AFFIRM.
 
 
 2
 I. Facts.
 
 
 3
 The appellant, John Cooper Produce, Inc., doing business as Hi-C Produce & Truck Brokers, Inc. [hereinafter "Hi-C" ], acts as a broker of trucking services, matching up clients needing goods transported with independent truck drivers willing to haul. Hi-C owns no trucks and does not directly employ truckers. Rather it works on a commission basis and deals with the truckers as independent contractors.
 
 
 4
 On June 24, 1982, one Robert Steven, since disappeared, carried through to fruition what was evidently a scheme to make off with a load of chickens owned by the Gold Kist Company which Steven was to have transported from Trussville, Alabama, to St. Louis, Missouri. One day prior, Steven had approached Hi-C soliciting a contract to haul. Because he was unknown to appellant, Hi-C followed its customary practice and asked for references. Steven supplied these; none of them checked out. On June 24 Steven called Hi-C and was told that his references had no information on him. Thereupon Steven informed Hi-C that he had insurance for cargo loss which he had purchased through appellee S. Clayton Callaway Co., a selling agent for appellee Palmer & Co. Insurance, Inc., which was in turn a general agent for appellee Paxton National Insurance Co.
 
 
 5
 Hi-C phoned Callaway that morning, inquiring as to Steven's status, and was informed that a binder of insurance in the amount of $20,000 had been issued to Steven effective June 24, 1982. Hi-C requested and was mailed written confirmation of that binder. Callaway's authority to issue the binder was stipulated in the pretrial order issued by the district court.
 
 
 6
 Upon these assurances, Hi-C entered into the contract with Steven noted above. The driver departed as planned with his cargo, valued at over $17,000, but never arrived in St. Louis. The FBI and local police determined that Steven had supplied both appellant and appellee with false information concocted in furtherance of his scheme.
 
 
 7
 Hi-C made good the loss to Gold Kist and tendered a demand for payment from appellees, apparently claiming that Hi-C was directly insured by the policy. The appellees refused payment on the grounds that the binder was not binding because there was material misrepresentation and fraud in the inducement of the contract, rendering it invalid.
 
 
 8
 On August 11, 1982, appellant brought an action for payment of his loss against all appellees in the Circuit Court of DeKalb County, Alabama. Appellant is a citizen of Alabama, while appellees Callaway and Palmer (and apparently the absent Steven if his representations are to be believed) are citizens of Georgia. Appellee Paxton is a citizen of Pennsylvania. Upon timely motion of all defendant parties, the action was removed to the United States District Court. Hi-C's petition to remand to the Alabama state court was denied.
 
 
 9
 On October 9, 1984, at trial before a judge and jury, the court granted the appellees' motion for a directed verdict at the close of appellant's case. Fed.R.Civ.P. 50(a). The court found that the loss was not within the risk assumed by appellees, that there was no oral contract between appellant and Callaway, that appellant failed to prove that it was a party to the binder issued, and that there was no duty owed and consequently no breach.
 
 
 10
 II. Substantive Issues on Appeal.
 
 
 11
 On appeal, Hi-C argues first that the district court is deprived of diversity jurisdiction by the provisions of 28 U.S.C.A. Sec. 1332(c) (1982) and second that appellant is entitled to recover under the insurance binder because the loss was within the risk undertaken by the appellees under a valid and binding contract and because the appellees were negligent in issuing the binder without recognizing that Steven was engaged in fraud.
 
 
 12
 A) Jurisdiction.
 
 
 13
 Congress amended 28 U.S.C.A. Sec. 1332 specifically to remove from federal court diversity cases based on a "direct action" by a third party claimant against an insurer without joining a nondiverse insured, providing that:
 
 
 14
 [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen....
 
 
 15
 But this statutory provision does not act to destroy all diversity jurisdiction in claims arising against insurance companies. As this and other circuit courts of appeals have held, "where the suit brought either by the insured or by an injured third party is based not on the primary liability covered by the liability insurance policy but on the insurer's failure to settle within policy limits or in good faith, the section 1332(c) direct action proviso does not preclude diversity jurisdiction." Fortson v. St. Paul Fire & Marine Ins. Co., 751 F.2d 1157, 1159 (11th Cir.1985); accord Beckham v. Safeco Ins. Co., 691 F.2d 898, 901-02 (9th Cir.1982); Velez v. Crown Life Ins. Co., 599 F.2d 471, 473 (1st Cir.1979). In other words, the statute will defeat diversity jurisdiction only if the claim which the third party has against the insured--for intentional tort, negligence, fraud, etc.--is the same one asserted against the insurance company as within the zone of primary liability for which the company issued the policy.
 
 
 16
 Here any claim that Hi-C might have against the absent Steven would be premised on some theory of fraud or tortious theft. The appellant's claim against the appellees in this case, as best we can make out from a brief that was hardly a model of clarity, was based on contract and on negligence on the part of the appellees for failure to determine the nefarious nature of Steven's scheme. This claim is independent of any Hi-C might assert against the insured. Accordingly it falls squarely under our holding in Fortson.
 
 
 17
 Appellant attempts to avoid this result by arguing that Hi-C was directly insured under the binder issued and was subrogated to the direct action that appellant argued Gold Kist had against appellees. Hi-C alleges it thereby obtained a "direct action" against appellees sufficient to come under the provisions of Sec. 1332(c), and refers us, as precedent for such an assertion, to 6 A.L.R.2d 142 and to First National Bank v. Mfrs. Trust Co., 2 F.R.D. 125 (D.N.J.1941), the latter languishing uncited by a federal court for almost 40 years until today. These are, of course, inapposite in light of our holding in Fortson. We there held that the status of the plaintiff as an insured or as an injured third party is irrelevant to the applicability of Sec. 1332(c). 751 F.2d at 1159.
 
 
 18
 Accordingly, we find no merit in appellant's challenge to the jurisdiction of the federal courts to hear this case.
 
 
 19
 B) The Directed Verdict.
 
 
 20
 In reviewing an appeal from a directed verdict under Fed.R.Civ.P. 50(a) we will disturb the judgment below only " 'if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions....' " Johnson v. Bryant, 671 F.2d 1276, 1279 (11th Cir.1982) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969) (en banc)).
 
 
 21
 Here we find no substantial evidence contrary to the determination of the court below that a directed verdict was warranted, and hence no reversible error on any of the counts or in any of the alternative findings of the district court. Under any possible conception of the facts of this case favorable to the appellant, the claim is nevertheless without merit; the disposition of this case by the district court was entirely appropriate.
 
 
 22
 AFFIRMED.