Gregoria ROSA, Plaintiff–Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Defendant–Appellee.

No. 173, Docket 92–7535.

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1992.

Decided Dec. 23, 1992.

Gregoria Rosa, pro se.

Robyn G. Nir, Uniondale, NY (Evan H. Krinick, Rivkin, Radler & Kremer, on the brief), for defendant-appellee.

Before KEARSE, MINER, Circuit Judges, and POLLAK *, District Judge.

LOUIS H. POLLAK, District Judge:

Section 1332(c) of Title 28, which for the purposes of federal court diversity jurisdiction treats a corporation as a citizen "of any State by which it has been incorporated and of the State where it has its principal place of business," contains the following proviso:

[I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business ...

28 U.S.C. § 1332(c)(1) (1988). This case tests the applicability of the § 1332(c) "direct action" proviso to a suit brought in a federal district court by an automobile passenger hurt in an accident who seeks to recover from the automobile owner's insurance carrier certain benefits allegedly owed under the owner's no-fault insurance policy. The principal question presented is whether such a suit is a "direct action" within the meaning of the proviso. An affirmative answer would bar subject mat-

ter jurisdiction in this case, since, notwithstanding that the named parties—the plaintiff injured passenger and the defendant insurance carrier—are of diverse citizenship, the passenger and the insured are not. We conclude that the suit is not a "direct action" and hence that the district court has subject matter jurisdiction of plaintiff's suit.

I

On March 20, 1991, plaintiff, a New York citizen, was injured in an automobile accident while a passenger in an automobile driven and owned by defendant Allstate Insurance Co.'s insured, also a New York citizen. Under New York's no-fault insurance law, the insurer of a motor vehicle pays benefits to any person, other than occupants of another motor vehicle, for loss arising out of operation of the insured vehicle, regardless of who was at fault. N.Y.Ins.Law § 5103 (McKinney 1985). Six days after the accident, plaintiff applied for no-fault benefits from Allstate, and, soon thereafter, began to receive payments from Allstate for medical treatments. Pursuant to the terms of the no-fault insurance policy, Allstate arranged for plaintiff to be examined by three physicians;[1] those examinations took place on June 14, 1991. The three doctors provided reports indicating that plaintiff had been obstructive during the evaluations; therefore, Allstate discontinued plaintiff's no-fault benefits as of June 14, 1991, claiming that plaintiff's failure to cooperate breached the insurance policy.

On July 25, 1991, plaintiff, proceeding *pro se*, filed a diversity action against Allstate in the United States District Court for the Eastern District of New York. The complaint did not name Allstate's insured as a party-defendant. Arguing that Allstate had arbitrarily and maliciously denied her medical benefits and thereby exacerbated the injuries she sustained in the accident, plaintiff asserted several claims, in-

---

* The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Allstate's policy provides that "[t]he eligible injured person shall submit to medical examina-

tion by physicians selected by, or acceptable to, the Company, when, and as often as, the Company may reasonably require." Appellee's App. at 94.

cluding breach of contract, intentional infliction of emotional distress, fraud, and injurious falsehood. Plaintiff sought "real and punitive" damages in the amount of $7,500,000.

On or about July 25, 1991, a summons and a complaint were sent by certified mail to Allstate in Illinois, its place of incorporation and principal place of business. Service of process was not acknowledged by Allstate. Plaintiff again attempted service on August 30, 1991, this time pursuant to § 253 of the New York State Vehicle and Traffic Law, which authorizes mail service of a complaint and summons upon nonresident motorists by or on behalf of a plaintiff who has first delivered such summons to the New York Secretary of State. Again, service of process was not acknowledged by Allstate. In light of Allstate's failure to file an answer, plaintiff filed notice of a motion for default judgment on October 3, 1991. Thereafter, on October 22, 1991, plaintiff apparently made personal service on a New York representative of Allstate. Eight days later, on October 30, 1991, Allstate served an answer.

On November 13, 1991, the United States Marshal effected personal service of a supplemental summons and complaint on Allstate in Illinois. Approximately one week later, plaintiff filed a second motion for default judgment, and, on December 2, 1991, defendant served an answer to the supplemental complaint. On December 13, 1991, Allstate responded to the motions for default judgment, arguing that the initial attempts at mail service were legally insufficient to effectuate service on it. In Allstate's view, Vehicle and Traffic Law § 253 applied only to tort actions against the owner and operator of a motor vehicle and not to contract actions against the insurer.

On February 5, 1992 Magistrate Judge Caden—to whom the case had been referred—issued a Report and Recommendation, agreeing that mail service was im-

proper under both § 253 and the Federal Rules of Civil Procedure (since Rule 4(c)(2)(C)(ii) requires, after unacknowledged mail service, that the complaint and summons be re-served personally on defendant). Deciding that service of the complaint was not suitably effected until November 13, 1991,[2] and that Allstate's amended answer was, therefore, filed within the time period required by the Federal Rules of Civil Procedure, Magistrate Judge Caden recommended that the motions for default judgment be denied.

Five days after the Report and Recommendation suggesting denial of the motions for default judgment, Magistrate Judge Caden, in response to a motion to dismiss filed by Allstate, issued a second Report and Recommendation advising that the complaint be dismissed for lack of subject matter jurisdiction. Magistrate Judge Caden reasoned that the lawsuit was, within the meaning of the "direct action" proviso of § 1332(c), a "direct action" against the insurer in which the insured had not been named as a party-defendant, and therefore 28 U.S.C. § 1332(c) required that Allstate be deemed a citizen not only of Illinois, its place of incorporation, but also of New York, the insured's place of citizenship. Because plaintiff was also a New York citizen, there was no diversity of citizenship.

The district court adopted both Reports and Recommendations on April 14, 1992. Seven days later, plaintiff filed a notice of appeal to this Court. She raises two points: (1) the principal contention is that the district court erred in dismissing her complaint for lack of subject matter jurisdiction; (2) the second contention is that the district court erroneously denied her motions for default judgment.[3]

## II

The diversity provisions of the First Judiciary Act did not address the issue of cor-

---

**2.** Magistrate Judge Caden did not discuss the October 22, 1991 service upon the Allstate representative in New York. *See infra* note 23.

**3.** In her brief on appeal, plaintiff also argues that she is entitled to punitive damages against

Allstate; however, the district court never reached this question, having dismissed for lack of subject matter jurisdiction. Accordingly, we will not resolve the issue of plaintiff's entitlement to punitive damages.

porate citizenship. When the Supreme Court first addressed the issue it determined that a corporation was, as an entity, not a citizen for diversity purposes and hence could sue or be sued in diversity only if the citizenship of each of its stockholders was diverse from that of adverse parties. *See Bank of the United States v. Deveaux,* 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809). Later, the Court reexamined the corporate citizenship question, holding that each stockholder—and therefore the corporation—would be treated as a citizen of the state in which the corporation was incorporated. *See Marshall v. Baltimore & Ohio R.R.,* 57 U.S. (16 How.) 314, 14 L.Ed. 953 (1854); *Louisville Cincinnati & Charleston R.R. v. Letson,* 43 U.S. (2 How.) 497, 11 L.Ed. 353 (1844). This determination created the opportunity to invoke diversity jurisdiction in a large number of actions involving corporations, including those brought by or against corporations that—although they had local headquarters—were incorporated out-of-state. Concerned about this development,[4] Congress, in 1958, added § 1332(c) to the diversity statute, providing that a corporation is a citizen both "of any State by which it has been incorporated and of the State where it has its principal place of business."

Shortly after the addition of § 1332(c), Congress addressed another asserted abuse of diversity jurisdiction. In the early 1950s, Louisiana had passed a so-called "direct action" statute permitting an injured party to bring a tort action directly against an insurer without having to join the alleged tortfeasor insured as a party-defendant.[5] *See* La.Rev.Stat.Ann. § 22:655(B)(1) (West 1992). The statute was designed to eliminate the necessity of two lawsuits: the first in which the victim sued the insured, and the second in which—if the victim prevailed on the merits—the insured would seek indemnity from his insurer. *Evanston Ins. Co. v. Jimco, Inc.,* 844 F.2d 1185, 1188 (5th Cir.1988).

The Supreme Court was soon presented with the question whether diversity jurisdiction existed when a Louisiana citizen sued a foreign insurance company under the Louisiana Direct Action Statute without joining the insured, a fellow Louisiana citizen. *See Lumbermen's Mut. Casualty Co. v. Elbert,* 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59 (1954). The Court allowed that it did; however, in a concurring opinion, Justice Frankfurter described the preferential treatment that a "direct action" plaintiff would receive once brought under the umbrella of federal procedure on matters of local concern:

> Here we have a Louisiana citizen resorting to the federal court in Louisiana in order to avoid consequences of the Louisiana law by which every Louisiana citizen is bound when suing another Louisiana citizen.... [B]y the fortuitous circumstance that this Louisiana litigant could sue directly an out-of-state insurance company, she can avoid her amenability to Louisiana law. In concrete terms, she can cash in on the law governing jury trials in the federal courts, with its restrictive appellate review of jury verdicts, and escape the rooted jurisprudence of Louisiana law in reviewing jury verdicts. There is, to be sure, a kind of irony for corporate defendants to discover that two can play at the game of working, to use a colloquial term, the perverse potentialities of diversity jurisdiction. But it is not the less unreason and no greater fairness for a citizen of the forum to gain a discriminatory advantage over fellow citizens of his State, than it is for an out-of-state citizen to secure more than the same treatment given local citizens, by going to a federal court for the adjudication of state-created rights.

*Id.* at 56–57, 75 S.Ct. at 156–157 (Frankfurter, J., concurring).

In 1964, in direct response to a large number of "direct action" cases brought in

---

4. *See* 13B Charles A. Wright et al., *Federal Practice & Procedure* § 3624, at 607–08 (1984).

5. The Louisiana Direct Action Statute did not, and does not, apply to contract claims. *Deutsche–Schiffahrtsbank A.G. v. A. Bilbrough & Co.,* 563 F.Supp. 1307, 1309 (E.D.La.1983).

the federal district courts in Louisiana[6] that "[did] not come within the spirit or the intent ... of the diversity jurisdiction of the Federal judicial system," S.Rep. No. 1308, 88th Cong., 2d Sess. 7 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2778, 2784, Congress amended § 1332(c) to provide that in a "direct action against the insurer of a policy or contract of liability insurance," where the "insured is not joined as a party-defendant," the citizenship of the insured would be attributed to the insurer. In the case at bar, the parties apparently agree that an action has been brought against an insurer on "a policy or contract of liability insurance"[7] to which the insured "is not joined as a party-defendant"; the intriguing question that remains is whether this case involves a "direct action" within the intendment of the 1964 amendment.

### A.

■ The question whether the § 1332(c) proviso applies to a claim brought by an injured third-party under a no-fault insurance contract has received limited attention, with divided results. *Compare Ford Motor Co. v. Insurance Co. of N. Am.*, 669 F.2d 421 (6th Cir.1982) (§ 1332(c)'s proviso applies to a no-fault insurance action brought by an injured third party) *and Fox v. Liberty Mut. Ins. Co.*, 553 F.Supp. 393 (S.D.N.Y.1983) (same) *and McMurry v. Prudential Property & Casualty Ins. Co.*, 458 F.Supp. 209 (E.D.Mich.1978) (approved in *Ford*) with *Fleming v. Allstate Ins. Co.*, 709 F.Supp. 216 (D.Colo.1989) (proviso does not apply to a no-fault insurance action brought in state court by injured pedestrian and removed to federal court by insurer).[8] This Court's published opinions have never had occasion to address the § 1332(c) proviso, much less to consider its applicability to suits brought against an insurer under a no-fault insurance contract. One district court decision within this Circuit—*Fox, supra*—squarely holds that the § 1332(c) proviso defeats diversity jurisdic-

**6.** Wisconsin also had a "direct action" statute in 1964; however, the filing of suits under that statute had not "imposed any undue burden upon the Federal district courts therein." S.Rep. No. 1308, 88th Cong., 2d Sess. 2 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2778, 2779.

**7.** Although the parties did not brief the issue of whether this case involves a "policy or contract of liability insurance," and we have no occasion to address it, we note that this issue is not an insubstantial one. Historically, liability insurance has been seen as

> a third party, fault based insurance—that is, the insurance company agrees to provide indemnification for an insured in the event that the insured is legally obligated to a third party who is injured as a consequence of the insured's negligence.

Robert E. Keeton & Allen I. Widiss, *Insurance Law* § 4.10, at 411 (1988). By contrast, "first-party" motor vehicle insurance coverages were traditionally designed to indemnify the named insured and parties closely associated with him against any injuries they might suffer from operation of the vehicle, regardless of fault. *Id.* Contemporary no-fault statutes expand "first-party" insurance protection to cover a broader class of accident victims—including "third parties" who, under a fault system, might have brought a tort liability suit against the insured driver. Still, because no-fault insurance benefits are paid automatically to any covered person regardless of tort liability, *see infra* pp. 677–79, it is arguable that no-fault coverage should

be regarded as "first-party" indemnity insurance rather than third-party "liability insurance." *See Liberty Mut. Ins. Co. v. State of N.Y.*, 94 Misc.2d 676, 405 N.Y.S.2d 945, 947 (Ct.Cl.1978) (noting that an insurer's obligations under a no-fault policy do not arise "because of any 'liability of the insured'" but "directly by reason of the law's provisions and their legislatively mandated incorporation into its policy with the insured"). However, this view is in some tension with several decisions interpreting the term "liability insurance" broadly to mean "'an indemnity agreement which protects the insured against his liability to others.'" *E.g. Aetna Casualty & Sur. Ins. Co. v. Greene*, 606 F.2d 123, 126 (6th Cir.1979) (quoting *Twin City Fire Ins. Co. v. Wilkerson*, 247 F.Supp. 766, 767 (E.D.Tenn. 1965)) (worker's compensation insurance policy is a "policy or contract of liability insurance"). Insofar as no-fault insurance coverage shields the insured from basic tort liability, *see infra* note 15 and accompanying text, it might be said to fit within this expansive definition.

**8.** In *Fleming*, the defendant insurer was Allstate, and it successfully urged a construction of § 1332(c) contrary to that it has contended for in the present litigation. Allstate's position in *Fleming* was consistent with the position it had successfully advocated several years before in two Eastern District of Michigan cases—*Thornton v. Allstate Ins. Co.*, 492 F.Supp. 645 (E.D.Mich.1980) and *Watkins v. Allstate Ins. Co.*, 503 F.Supp. 848 (E.D.Mich.1980)—which the Sixth Circuit in *Ford* declined to follow.

tion in no-fault actions brought against an out-of-state insurer. In *Fox*, the court found

> no reason why [the proviso] should not be applicable to subsequently adopted state no-fault laws. They create the same problem of increasing federal diversity jurisdiction. The language is broad enough to encompass any direct action against the insurance company on a liability policy.

553 F.Supp. at 393; *see also Ford*, 669 F.2d at 425 (emphasis in original) ("The language of the amendment is inclusive rather than exclusive: 'in *any* direct action....'"). However, we decline to adopt this expansive reading of the phrase "direct action."

■ The Senate Report accompanying the 1964 amendment to § 1332(c) that added the proviso sets forth the legislative purpose:

> The purpose of the proposed legislation is to amend section 1332(c) of title 28, United States Code, so as to eliminate

under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State "direct action" statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant.

S.Rep. No. 1308, 88th Cong., 2d Sess. 1 (1964), reprinted in 1964 U.S.C.C.A.N. 2778, 2778–79. Sensitive to congressional design,[9] a number of courts have recognized that "direct action" is a form of words taken from the Louisiana statute and that simply because an insurer is a direct party does not make the litigation a "direct action." *Evanston Ins.*, 844 F.2d at 1188; *see also White v. United States Fidelity & Guar. Co.*, 356 F.2d 746, 747 (1st Cir.1966), *Bodine's Inc. v. Federal Ins. Co.*, 601 F.Supp. 47, 50 (N.D.Ill.1984). These courts have tended to limit the § 1332(c) proviso to situations where the insurer's status is that of a "'payor of a judgment based on the negligence of one of its insureds.'"[10]

---

9. Courts extending the proviso to no-fault insurance actions have advocated "interpret[ing] it liberally" in order for "the proviso to be effective." *McMurry*, 458 F.Supp. at 211. However, the Supreme Court recently resisted a similar invitation in *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989). In that case, the Court decided that the "direct action" proviso—which expressly applies to suits brought "against" insurers—could not be extended to bar similar suits brought *by* insurers. The Court "refuse[d] to attribute to Congress an intent broader than that specifically expressed in the direct action proviso." *Id.* at 12, 110 S.Ct. at 300. *Cf. United Steelworkers of Am., AFL–CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 150, 86 S.Ct. 272, 274, 15 L.Ed.2d 217 (1965) (refusing to extend § 1332(c)'s definition of the citizenship of a "corporation" to a labor union because policy arguments for applying that provision to a class of litigants not specified in the statute, however appealing, "are addressed to an inappropriate forum"); *District of Columbia, ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1049 (D.C.Cir. 1986) (declining to apply the proviso to all claims that are "arguably analogous" to tort suits brought under "direct action" statutes, in light of "the limited and precise purpose behind the relevant language in § 1332(c), and the narrowness of the language itself"). Particularly after *Northbrook*, we should be reluctant to give the proviso a broader reach than the clear purpose set forth by Congress.

10. It is true that other courts—refusing to limit the 1964 amendment to cover only "traditional tort claims" in which the insurance company is the payor of the judgment—have extended the amendment to actions seeming to sound in contract. *See, e.g., Aetna Casualty & Sur. Ins. Co. v. Greene*, 606 F.2d 123, 126 (6th Cir.1979) (actions for workmen's compensation, although contractual in nature, are covered by the proviso because there is no adequate basis for inferring that Congress intended any "fine distinction" between contract and tort actions); *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721, 723 (5th Cir.) (suit by employee against his employer's workmen's compensation insurer), *cert. denied*, 419 U.S. 844, 95 S.Ct. 78, 42 L.Ed.2d 73 (1974); *Tyson v. Connecticut Gen. Life Ins. Co.*, 495 F.Supp. 240, 242–43 (E.D.Mich.1980) (employee suit for disability benefits against his employer's insurer). However, in each of these cases the insured, as the plaintiff's employer, owed the benefit in question to plaintiff by virtue of the employment relationship and had transferred that liability to an insurance carrier. Therefore, these cases maintain the essential feature of a tort "direct action" in that the insurer has been substituted as a party-defendant for the legally responsible insured. Thus, in *Tyson*, plaintiff sued her employer's insurer for wrongful failure to pay disability benefits under a group insurance policy with her employer. The court noted that disability protection was

> part of plaintiff's employment package, and thus constituted one aspect of [the employ-

*Myers v. State Farm Ins. Co.*, 842 F.2d 705, 707 (3d Cir.1988) (proviso does not apply to suit for underinsurance benefits by injured third party brought against the insurance carrier of the vehicle's owner and operator); *Velez v. Crown Life Insurance Co.*, 599 F.2d 471, 473 (1st Cir.1979) (§ 1332(c) proviso does not apply to suit by son of deceased against insurer for failure to meet its obligations under the deceased's life insurance policy); *see also District of Columbia, ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1048–49 (D.C.Cir.1986) (refusing to extend the proviso to a contract claim against an insurer on a performance bond in view of Congress' limited intent to bar jurisdiction over local tort claims); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 995 (5th Cir.1985) (noting that Louisiana's "direct action" statute only applies to tort disputes and therefore the § 1332(c) proviso should not defeat diversity in a case involving claims on a fire insurance policy). Because the § 1332(c) proviso is applicable

when the insurer stands in the shoes of its legally responsible insured, who would traditionally be a defendant, the general rule is that the proviso does not affect suits against the insurer based on its independent wrongs: such as actions brought against the insurer either by the insured for failure to pay policy benefits [11] or by an injured third party for the insurer's failure to settle within policy limits or in good faith.[12] The Ninth Circuit has succinctly captured the prevailing rule:

> Courts have uniformly defined the term "direct action" as used in this section as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him.... Thus, "unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action."

er's] obligation to plaintiff as its employee.... [The employer's] obligation to plaintiff was met in part by its contract of insurance with defendant.... The insurer's alleged obligation to plaintiff would not exist but for the primary obligation owed by [the employer] to plaintiff as a result of their employment relationship. Plaintiff is, in essence, seeking recovery from an insurer pursuant to an obligation undertaken by her employer. Thus this is a "direct action against the insurer" under the proviso in § 1332(c).

495 F.Supp. at 243 (citations omitted). Similarly, in *Aetna*, under the workers' compensation laws in question, an employer and his compensation carrier were jointly and severally liable for all injuries sustained by the employee in the course of his employment; therefore, the employer was a proper, although not an indispensable, party. *See* 606 F.2d at 125, 126 n. 3. Finally, in *Hernandez*, a unique Texas workers' compensation statute allowed an employee only to sue his employer's insurer, not his employer. Even though the employer could not have been joined in the suit, it owed some primary obligation to the plaintiff as a result of the employment relationship, and the court concluded that the plaintiff had suffered injuries or damages for which his employer was "legally responsible." 489 F.2d at 724. Indeed, *Hernandez* specifically distinguished its holding from cases where the injured party brings suit not on the primary liability of the insurance contract but for failure to settle within policy limits. *See id.* at 724–25.

**11.** *See Bowers v. Continental Insurance Co.*, 753 F.2d 1574, 1576 (11th Cir.) (insured's suit against his no-fault insurer is not a "direct action"), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1334 n. 3 (7th Cir.1983) (fire policy); *Velez*, 599 F.2d at 473; *Pizzitola v. Berkshire Life Ins. Co.*, No. 91–CV–641, 1992 WL 165833 (N.D.N.Y. July 1, 1992) (life insurance contract); *Mazzuka v. SMA Life Assurance Co.*, 726 F.Supp. 1400, 1401 (E.D.N.Y.1990) (health insurance policy); *Irvin v. Allstate Ins. Co.*, 436 F.Supp. 575, 576–77 (W.D.Okla.1977) (suit for uninsured motorist coverage); *Adams v. State Farm Mut. Auto. Ins. Co.*, 313 F.Supp. 1349, 1352 (N.D.Miss.1970) (same); *Bishop v. Allstate Ins. Co.*, 313 F.Supp. 875, 876 (W.D.Ark.1970) (same); *see generally* 13B Charles A. Wright et al., *Federal Practice and Procedure* § 3629, at 674–75 (1984).

**12.** *See Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 847 (10th Cir.1988) (bad faith suit by insured's parents against insurer that denied their claims for uninsured motorist benefits is not a "direct action"), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989); *John Cooper Produce, Inc. v. Paxton Nat'l Ins. Co.*, 774 F.2d 433, 435 (11th Cir.1985) (per curiam); *Fortson v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir.1985) (bad faith suit against insurer who denied liability on behalf of its insured); *Beckham v. Safeco Ins. Co. of Am.*, 691 F.2d 898, 902 (9th Cir.1982) (same).

*Beckham v. Safeco Ins. Co. of Am.,* 691 F.2d 898, 901–02 (9th Cir.1982) (citations omitted);[13] *accord McGlinchey v. Hartford Accident & Indem. Co.,* 866 F.2d 651, 653 (3d Cir.1989); *Fortson v. St. Paul Fire & Marine Ins. Co.,* 751 F.2d 1157, 1159 (11th Cir.1985).

## B.

New York's Comprehensive Motor Vehicle Insurance Reparations Act ("no-fault law"), N.Y.Ins.Law § 5101 *et seq.* (McKinney 1985), adopted in 1973, requires the insurer of any vehicle owner to pay benefits to "[p]ersons, other than occupants of another motor vehicle or a motorcycle, for loss arising out of the use or operation in this state of such motor vehicle." *Id.* § 5103(a)(1). Courts extending the § 1332(c) proviso to no-fault claims have been impressed by what, on the surface, appears to be a strong, formal kinship between the operation of no-fault laws and "direct action" statutes: each enables an injured party to proceed against the insurer rather than the insured. *See Ford,* 669 F.2d at 425; *McMurry,* 458 F.Supp. at 211–12. However, beneath this surface procedural similarity lurk crucial substantive differences.

**13.** In the Ninth Circuit, this principle is regarded as so well-entrenched that one district court has imposed Rule 11 sanctions on an attorney who argued—contrary to this principle, of which he had been made aware by opposing counsel—for remand in a case in which plaintiff sued a diverse insurance company for breach of a duty of good faith and fair dealing. *See Blake v. Nat'l Casualty Co.,* 607 F.Supp. 189 (C.D.Cal. 1984).

**14.** The Louisiana Direct Action statute, for example, provides that a direct action "may be brought against the insurer alone, or against both the insured and insurer jointly and in solido." La.Rev.Stat.Ann. § 22:655(B)(1) (West 1992).

**15.** A major objective of New York's no-fault insurance law is to eliminate most auto accident tort suits in order to reduce the burden on courts and avoid duplicate compensation for basic economic loss. *Palmer v. Allstate Ins. Co.,* 101 A.D.2d 127, 475 N.Y.S.2d 436, 441 (App. Div.2d Dep't 1984); *Liberty Mut. Ins. Co. v. State*

In a case brought against an insurer pursuant to a "direct action" statute, the insurer's liability depends on proof of negligence of the insured, who may be joined should the plaintiff so choose.[14] Therefore—far from upending traditional tort liability—the "direct action" statute is "a procedural convenience, a telescoping of the actions available to the victim of the alleged conduct of an insured." *Evanston Ins.,* 844 F.2d at 1188.

The innovation of no-fault, by contrast, is to create a "form of compensation unknown at common law, resting on predicates independent of the fault or negligence of the injured party." *Safeco Ins. Co. of America v. Jamaica Water Supply Co.,* 83 A.D.2d 427, 444 N.Y.S.2d 925, 928 (App.Div.2d Dep't 1981), *aff'd,* 57 N.Y.2d 994, 457 N.Y.S.2d 245, 443 N.E.2d 493 (1982). Thus, in most circumstances, New York's no-fault law operates to remove the traditional right to sue the insured operator of the vehicle in tort.[15] As a corollary, New York's no-fault law makes a broad category of affected persons—such as the plaintiff in the instant case as an occupant of the insured vehicle—"covered person[s],"[16] N.Y.Ins.Law § 5102(j) (McKinney 1985), entitled to "first party benefits" by force of law. *Id.* § 5103(a).

*of N.Y.,* 94 Misc.2d 676, 405 N.Y.S.2d 945, 947 (Ct.Cl.1978). To that end, under New York law a covered person may not sue the owner or operator of an insured vehicle in tort for basic economic loss, and may recover for noneconomic harm and economic loss in excess of basic benefits from a negligent covered person only in the event of a "serious injury." N.Y.Ins. Law § 5104(a) (McKinney 1985). The widespread passage of no-fault laws spurred an active debate in the state courts as to whether the legislature had the power, consistently with constitutional norms, to abolish common law tort remedies. *See, e.g., Pinnick v. Cleary,* 360 Mass. 1, 271 N.E.2d 592 (1971); *Opinion of Justices,* 113 N.H. 205, 304 A.2d 881 (1973).

**16.** " 'Covered person' means any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle which has in effect the financial security required by article six or eight of the vehicle and traffic law or which is referred to in subdivision two of section three hundred twenty-one of such law; or any other person entitled to first party benefits." N.Y.Ins.Law § 5102(j).

Therefore, the configuration of the parties in a no-fault action, realistically viewed, differs substantially from the "direct action" scenario. Whereas a "direct action" is a tort claim in which the insurer essentially stands in the shoes of its legally responsible insured, no-fault coverage is contractual in nature,[17] 12A George J. Couch, *Cyclopedia of Insurance Law* § 45:664, at 263 (2d ed. 1981); 8D John A. Appleman & Gene Appleman, *Insurance Law and Practice* § 5163, at 442 (1981), and even a no-fault claimant who is not the named insured assumes the position of an insured with a right to enforce the insurance contract.[18] In a no-fault action, the insured driver is no longer an absentee party-defendant[19]—whose citizenship may properly be attributed to the insurer—because, unlike the derivative liability that arises in a "direct action," no-fault liability could not have been imposed against the insured driver. First, because the insured driver may be entirely blameless,[20] it cannot be said, as a general matter, that a no-fault action involves a situation in which the insured would ordinarily be expected to be a party-defendant.[21] More importantly, even in cases where the insured may have been negligent, the no-fault claim, by definition, is not based on that negligence. Rather, the claimant—like plaintiff in this case—seeks to hold the insurer responsible for breaching the terms of its insurance policy or for its independent tortious acts.[22]

17. In the instant case, arguing that plaintiff's service of process by mail was improper, defendant Allstate has stressed that plaintiff asserted a contract claim against it, and therefore could not serve pursuant to § 253 of the New York State Vehicle and Traffic Law (which provides for mail service of process in tort claims against a non-resident operating an automobile in New York). Appellee's App. at 30–31.

18. It is certainly arguable—although such a determination is not, strictly speaking, necessary to disposition of this case—that plaintiff is an "insured" under § 1332(c). Courts have construed the term "insured" in § 1332(c) broadly to include not only the named insured but also any person covered by an omnibus or "other insured" clause in the policy (for example, a clause that extends insurance coverage to anyone operating the car with the permission of the named insured). *See Dairyland Ins. Co. v. Makover*, 654 F.2d 1120, 1125 (5th Cir. Unit B. 1981); *Torres v. Hartford Ins. Co.*, 588 F.2d 848, 850 (1st Cir.1978); *Williams v. Liberty Mut. Ins. Co.*, 468 F.2d 1207, 1209 (5th Cir.1972) (per curiam). As noted in the text, plaintiff is a "covered person" under New York's no-fault law. Because the § 1332(c) proviso is designed to address cases in which an insured may be, but is not, joined as a party-defendant, it would be inappropriate for the proviso to affect situations where a person characterizable as an insured party sues the insurer, since a plaintiff obviously cannot join herself as a party-defendant. In no published federal case of which we are aware has a named insured suing an out-of-state insurer for breach of contract been excluded from federal court pursuant to § 1332(c). *See* cases cited *supra* note 11 and accompanying text. We can see no reason why the named insured should be able to sue the insurer for no-fault benefits, *see Bowers v. Continental Ins. Co.*, 753 F.2d 1574, 1576 (11th Cir.), *cert. denied*, 473 U.S. 906, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985), but plaintiff, asserting a similar claim for no-fault benefits, should be confined to state court simply because the policy under which she is covered is not held in her name.

19. If the named insured has any interest in a no-fault action brought by a beneficiary to the instrument, it would be as the promisee on that instrument, and, therefore, as a party-*plaintiff*. For instance, under Federal Rule of Civil Procedure 17(a), "a party with whom or in whose name a contract has been made for the benefit of another ... may sue in that person's own name without joining the party for whose benefit the action is brought ..." *Cf. Berger v. Heckler*, 771 F.2d 1556, 1564 (2d Cir.1985) (noting that under New York law, a promisee for the benefit of a third party may enforce the promise on behalf of third parties); *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 10 (2d Cir.1981) (same).

20. In the instant case, there is no intimation that the insured driver was at fault; indeed, the record—which suggests that the automobile in which plaintiff was a passenger was struck while waiting at an intersection for a fire truck on an emergency run, *see* Appellee's App. at 36, 75—supports an inference that the insured driver was likely not at fault. Of course, this observation tells us nothing about the present dispute between plaintiff and the driver's insurance carrier, which in no sense turns on the driver's fault or lack thereof.

21. "Under the fault theory, in instances where responsibility cannot be assessed, a claimant is at least in principle foreclosed from successfully pursuing indemnification by way of a tort suit." Robert E. Keeton & Allen I. Widiss, *Insurance Law*, § 4.10(b)(1), at 413 (1988).

22. Because plaintiff's claims against Allstate involve (1) the interpretation of an insurance poli-

Thus, in the present case, since the named insured presumably had nothing whatsoever to do with Allstate's decision to disallow benefits on the policy, and likewise presumably had no connection with the insurer's alleged scheme of malicious deception and fraud, it would appear that the named insured could not properly be sued on the claims at issue.

In similar situations involving suits by an injured third party against the insurer for failure to settle within the policy limits, courts have held that the § 1332(c) proviso does not control. In *Beckham, supra,* Beckham (the plaintiff) was seriously injured in an automobile accident and sued the other driver, Mankin, in state court. Mankin's defense was assumed by her primary insurer, and then her excess liability insurer, Safeco. Beckham and Safeco engaged in settlement negotiations, which were ultimately unsuccessful, and then proceeded to trial. After the jury awarded her $1,500,000 in the suit against Mankin, Beckham commenced another state court suit, this time against Safeco itself, alleging unfair settlement practices and intentional infliction of emotional distress. Safeco, a Washington corporation, removed the action to federal court, and Beckham, a California citizen, moved to remand, relying on the § 1332(c) proviso and Mankin's California citizenship. The Ninth Circuit decided that there was diversity jurisdiction, notwithstanding the direct action proviso. The court reasoned:

> The present suit is clearly not a direct action since Beckham is not seeking to impose liability on Safeco for the negligence of Safeco's insured, Mankin. Rather, she is seeking to impose liability on Safeco for its own tortious conduct, i.e., Safeco's bad faith refusal to settle

her claim against Mankin. Such liability could not be imposed against Mankin, nor could Mankin even be joined as a defendant in this suit.... The district court thus did not err in concluding that diversity jurisdiction existed in this case.

691 F.2d at 902 (citation omitted); *see also Cunningham v. State Farm Mut. Auto Ins. Co.,* 297 F.Supp. 1138 (E.D.Tenn.1969) (§ 1332(c) proviso inapplicable where plaintiff, having sued tortfeasor, institutes subsequent action against tortfeasor's insurer).

Similarly, in *Myers, supra,* Myers had sustained injuries as a passenger in an automobile owned and operated by the insured. The driver's policy provided for liability and underinsurance coverage each in the amount of $15,000, and, as a passenger, Myers was covered under the policy. The driver's insurer, State Farm, agreed to pay the full $15,000 in liability coverage to Myers, but denied him underinsurance benefits. Myers filed suit in state court seeking the additional $15,000 in underinsurance benefits from State Farm; State Farm removed the action to federal court; and Myers filed a motion for remand, which the district court denied. The Third Circuit concluded that "Myers, as an injured third party, brings this suit based on State Farm's failure to settle within the policy limits and not, as contemplated by section 1332(c), as a result of State Farm's status as 'payor of a judgment based on the negligence of one of its insureds.'" 842 F.2d at 707.

Because a party suing a diverse insurer for failure to make payments under an insurance contract or for bad faith refusal to settle is entitled to invoke diversity jurisdiction, it would be anomalous to deny access to a federal court to a no-fault claim-

cy issued by a foreign insurer and (2) independent torts allegedly committed by that foreign insurer, it is difficult to characterize the instant action as a local accident case involving only local residents. *Cf. Secured Casualty Ins. Co. v. Sinelnikoff,* 1 A.D.2d 1036, 152 N.Y.S.2d 15, 17 (App.Div.2D. Dep't 1956) (noting that, in case involving declaration of rights under an insurance contract, insurer's "allegedly false representations have no connection whatever with the automobile accident in this State; they were

not made here; and appellant's right to a judgment in its favor depends on nothing which occurred here"). However, Congress' plain objective in amending § 1332(c) was to ensure that *"tort cases involving only local residents,* which in the other States would come within the exclusive jurisdiction of the State courts" would not appear in federal court. S.Rep. No. 1308, 88th Cong., 2d Sess. 1 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2778, 2779 (emphasis added).

ant seeking a declaration of her rights under the insurer's policy. Accordingly, we will reverse the district court's ruling that the § 1332(c) proviso worked to deprive it of subject matter jurisdiction over the instant no-fault action.

### III

■ Plaintiff's motions for default judgment were correctly denied. In arguing that mail service upon Allstate was proper, plaintiff relies on § 253 of the Vehicle and Traffic Law. However, § 253 provides for mail service of process upon a non-resident owner or operator of an automobile for claims growing out of a New York accident and does not pertain to service upon the insurer in an insurance contract matter. *See Merchants Mut. Ins. Co. v. Jackson Trucking Co.*, 21 Misc.2d 1005, 193 N.Y.S.2d 135, 137 (Sup.Ct.1959); *Secured Casualty Ins. Co. v. Sinelnikoff,* 1 A.D.2d 1036, 152 N.Y.S.2d 15, 17 (App.Div.2d Dep't 1956).

■ Federal Rule of Civil Procedure 4(c)(2)(C)(ii) requires that unacknowledged mail service be followed by personal service, and such was not effected until November 13, 1991.[23] Allstate timely served its answer to the November 13, 1991 supplemental summons and complaint. Accordingly, the district court order will be affirmed insofar as it denied plaintiff's motions for default judgment.

### IV

The district court order dismissing the action for lack of subject matter jurisdiction is reversed, the order denying plaintiff's motions for default judgment is affirmed, and this case is remanded for further proceedings consistent with this opinion.

---

**23.** Even assuming that the service of process on Allstate's New York representative on October 22, 1991 constituted proper personal service under Federal Rule of Civil Procedure 4—i.e., if the agent was "authorized by appointment or by law to receive service of process," Fed.R.Civ.P. 4(d)(3)—Allstate served an answer to the original complaint on October 30, 1991 (within twenty days).