# NORTHBROOK NATIONAL INSURANCE CO. *v.* BREWER

No. 88–995.   Argued October 4, 1989—Decided November 7, 1989

MARSHALL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, WHITE, BLACKMUN, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. STEVENS, J., filed a dissenting opinion, *post*, p. 13.

*P. Michael Jung* argued the cause for petitioner. With him on the briefs was *E. Thomas Bishop*.

*Timothy M. Fults* argued the cause and filed a brief for respondent.*

JUSTICE MARSHALL delivered the opinion of the Court.

This case presents the question whether the "direct action" proviso of 28 U. S. C. § 1332(c) (1982 ed.)—which provides that in a direct action *against* a liability insurer, the insurer shall be deemed a citizen of the same State as the insured for purposes of diversity jurisdiction—applies to a workers' compensation action brought in federal court *by* an insurer. The Fifth Circuit held that the proviso applied so as to bar a diversity action brought by an Illinois insurer of a Texas corporation against a Texas employee. 854 F. 2d 742 (1988). Accordingly, it affirmed the District Court's dismissal for lack of subject-matter jurisdiction. Because the language of the proviso is unambiguously limited to actions brought *against* insurers, we reverse.

I

Respondent Larry Brewer is a Texas citizen and an employee of Whitmire Line Clearance, Inc., a Texas corporation. Petitioner Northbrook National Insurance Company, an Illinois corporation with its principal place of business in that State, was Whitmire's workers' compensation insurer. Under the Texas Workers' Compensation Act, an employee

---

*\*Michael A. Carvin* and *Craig Berrington* filed a brief for the American Insurance Association as *amicus curiae* urging reversal.

8

who suffers an injury in the course of employment "shall have no right of action against [the] employer . . . but . . . shall look for compensation solely to the [employer's insurer]." Tex. Rev. Civ. Stat. Ann., Art. 8306, § 3(a) (Vernon Supp. 1989). An employee must file his claim for compensation with the Texas Industrial Accident Board. Art. 8307, § 4a. Brewer filed a workers' compensation claim against Northbrook after he allegedly suffered an injury during the course of his employment. The board processed his claim and awarded him compensation.

Texas' workers' compensation law permits any party dissatisfied with a board ruling to bring a civil suit to set the decision aside. Art. 8307, § 5. The court determines the issues *de novo*, and the party seeking compensation bears the burden of proof, regardless of which party prevailed before the board. *Ibid.*

Northbrook filed suit against Brewer in Federal District Court, invoking the court's diversity jurisdiction under 28 U. S. C. § 1332 (1982 ed.). The District Court dismissed for lack of subject-matter jurisdiction, holding that Fifth Circuit precedent, *Campbell* v. *Insurance Co. of North America*, 552 F. 2d 604 (1977) *(per curiam)*, required it to apply the direct action proviso of the diversity statute. App. to Pet. for Cert. A–11. That proviso states:

> "[I]n any direct action *against* the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business." 28 U. S. C. § 1332(c) (1982 ed.) (emphasis added).

The District Court therefore attributed Whitmire's Texas citizenship to Northbrook, eliminating diversity between

Northbrook and Brewer. The Court of Appeals affirmed on the basis of *Campbell*. It noted, however, that *Campbell* stood on "weak jurisprudential legs." 854 F. 2d, at 745.

## II

We hold that the direct action proviso is not applicable in this case because Northbrook's suit was an action by, not against, an insurer.[1] "[W]e must take the intent of Congress with regard to the filing of diversity cases in Federal District Courts to be that which its language clearly sets forth." *Horton* v. *Liberty Mutual Ins. Co.*, 367 U. S. 348, 352 (1961) (holding that Congress' elimination of removal jurisdiction over workers' compensation suits did not withdraw original diversity jurisdiction over such suits). The language of the proviso could not be more clear. It applies only to actions *against* insurers; it does not mention actions *by* insurers.

The proviso's legislative history reinforces our reading of Congress' pellucid language. Congress added the proviso to § 1332(c) in 1964 in response to a sharp increase in the caseload of Federal District Courts in Louisiana resulting largely from that State's adoption of a direct action statute, La. Rev.

---

[1] Petitioner also argues that the proviso is inapplicable because this case does not involve a "direct action" within the meaning of § 1332(c). A direct action, according to petitioner, is a suit in which a party claiming injury seeks relief from the liability insurer of the party legally responsible for the injury; in such an action, the injured party neither joins nor first obtains a judgment against the legally responsible party. Petitioner contends that a workers' compensation suit against an employer's insurer is not a direct action in Texas because employers are not legally responsible for workers' compensation benefits under Texas law. Tex. Rev. Civ. Stat. Ann., Art. 8306, § 3(a) (Vernon Supp. 1989). Instead, the injured party must "look for compensation solely to the [insurer]." *Ibid.* Similarly, because Texas employers are not liable for workers' compensation benefits, petitioner asserts, Whitmire's policy with Northbrook did not provide "liability insurance" within the meaning of the proviso. We need not reach these arguments because we hold that the suit at issue here was not an action "against" an insurer.

Stat. Ann. § 22.655 (West 1959).   See S. Rep. No. 1308, 88th Cong., 2d Sess., 4 (1964); H. R. Rep. No. 1229, 88th Cong., 2d Sess., 4 (1964).   The Louisiana statute permitted an injured party to sue the tortfeasor's insurer directly without joining the tortfeasor as a defendant.   Its effect was to create diversity jurisdiction in cases in which both the tortfeasor and the injured party were residents of Louisiana, but the tortfeasor's insurer was considered a resident of another State.   Believing that such suits did "not come within the spirit or the intent of the basic purpose of the diversity jurisdiction of the Federal judicial system," S. Rep. No. 1308, *supra,* at 7, Congress enacted the proviso "to eliminate under the diversity jurisdiction of the U. S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly *against* a foreign insurance carrier without joining the local tort-feasor as a defendant," *id.,* at 1 (emphasis added).   See also H. R. Rep. No. 1229, *supra,* at 1.   Nowhere in the legislative history did Congress express any concern about diversity actions filed *by* insurance carriers.

The Fifth Circuit in *Campbell* reasoned that a suit such as Northbrook's is, in context, actually an action *against* the insurer.   The court noted that the entire process is initiated by the employee's filing a claim with the board, and that the employee retains the burden of proof at trial.   It also considered the insurer's action in court merely an "appeal" of the board award.   552 F. 2d, at 605.

We reject this analysis.   Although the employee in an action brought by the insurer retains some characteristics of a plaintiff at trial, such an action is still inescapably one by, not against, the insurer.   The action is commenced when the insurer files a complaint in federal court, not when the employee files his claim before the board.   See Fed. Rule Civ. Proc. 3 ("A civil action is commenced by filing a complaint with the court").   Moreover, once the court acquires juris-

diction over the suit, the board's award is vacated and no longer has any force or significance. *Latham* v. *Security Ins. Co. of Hartford*, 491 S. W. 2d 100, 104 (Tex. 1972). See also *Horton, supra*, at 355, n. 15 ("This makes it all the more clear that the matter in controversy between the parties to the suit is not merely whether the award will be set aside since the suit automatically sets it aside for determination of liability *de novo*"). Thus, this Court concluded in *Horton* that such actions are not considered appeals under Texas law. 367 U. S., at 354 (citing *Booth* v. *Texas Employers' Ins. Assn.*, 132 Tex. 237, 246, 123 S. W. 2d 322, 328 (1938)).

The *Campbell* court also reasoned that the same policy considerations that apply to actions brought by resident employees apply to actions brought by out-of-state insurers; thus, the court stated that it would be unfair to provide those insurers access to federal courts while denying such access to employees. 552 F. 2d, at 605. Petitioner argues, however, that *Campbell* ignored a crucial difference between the two situations that justifies different treatment. Absent federal jurisdiction, a workers' compensation action would be brought in a Texas state court, regardless of which party initiated it. Tex. Rev. Civ. Stat. Ann., Art. 8307a (Vernon Supp. 1989) (suit must be brought in county in which injury occurred or in which employee resided at the time of injury). Thus, the out-of-state insurer, unlike the resident employee, would, "at least in theory, be subject to a local prejudice in favor of the injured resident." *Aetna Casualty & Surety Ins. Co.* v. *Greene*, 606 F. 2d 123, 127 (CA6 1979) (rejecting *Campbell*'s approach).

Petitioner's position is not wholly convincing. Although it may explain why Congress would permit out-of-state insurers, but not injured state residents, to sue in federal court, it does not explain why Congress would deny those insurers access to a federal forum when injured residents initiate suit in state court. By eliminating diversity jurisdiction over

direct actions against out-of-state insurers, Congress also prevented those insurers from removing such actions to federal courts, because federal removal jurisdiction is limited to actions which could have been brought originally in federal courts. See 28 U. S. C. § 1441(a) (1982 ed.).[2] Yet it is difficult to see how the nonresident insurer's interest in a federal forum is any greater when it brings the action than when an injured resident does. It therefore seems somewhat anomalous for Congress to retain original diversity jurisdiction over actions by out-of-state insurers while withdrawing removal jurisdiction.

This seeming incongruity, however, is insufficient to persuade us to extend the scope of Congress' precise wording in § 1332(c). In *Horton*, this Court confronted a similar question: whether Congress' explicit withdrawal of removal jurisdiction over workers' compensation cases, see n. 2, *supra*, precluded a diversity action brought in the first instance by an out-of-state insurer under the Texas workers' compensation statute. The District Court had answered that question in the affirmative, reasoning that the concerns that persuaded Congress to eliminate removal jurisdiction—reducing congestion in federal courts and relieving injured employees of the burden of having to litigate in more distant federal courts—were also applicable when nonresident insurers initiated the actions. 367 U. S., at 351–352. Although this Court noted that these considerations were "appealing," *id.*, at 352, it refused to assume that Congress intended anything more than it had stated in unambiguous terms. *Ibid.* Similarly, we refuse to attribute to Congress an intent broader than that specifically expressed in the direct action proviso. Congress could easily have used language to bar suits *by* in-

---

[2] In this case, removal would also be precluded by 28 U. S. C. § 1445(c) (1982 ed.) which states: "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

surers as well as those *against* insurers, and it can easily do so still. See *ibid.*

In sum, the direct action proviso is limited by its terms to actions against insurers. We cannot doubt that Congress meant what it said. We therefore reverse the decision of the Court of Appeals and remand for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

Workers' compensation is generally a subject of local interest and control with which federal courts have only minimal contact. The Texas Workers' Compensation Act is unusual because employers who carry workers' compensation insurance normally are not parties to the processing of claims that are made against their insurers. Moreover, when an award is made, either the employee or the insurance company may obtain *de novo* review in a judicial proceeding in which the employee bears the burden of proof regardless of which party requested review. In other words, in both the administrative proceeding and the judicial proceeding, the employee is the party who must assert and prove that his claim against a carrier is meritorious.

One of the consequences of the unique Texas program was the generation of an unusually large volume of federal litigation between Texas employees and out-of-state insurance companies. In 1957 the dockets of the United States District Courts in Texas were burdened with 2,147 Texas workers' compensation cases. Over half of them (1,148) were cases that had been originally filed in a Texas court and removed to a federal court. Of the remainder, 957 were original actions filed by employees and 25 were original actions filed by insurance carriers.[1] The statute enacted by Con-

---

[1] There were also 17 cases transferred from other jurisdictions. See S. Rep. No. 1830, 85th Cong., 2d Sess., 8 (1958).

gress in 1958,[2] which prevents the removal of workers' compensation cases, eliminated a little over half of that burden but did not affect the actions originally filed in the federal district court by either employees or insurance carriers. See *Horton* v. *Liberty Mutual Ins. Co.*, 367 U. S. 348, 352 (1961); see also *ante*, at 9.

In 1964, Congress passed another statute further curtailing federal diversity jurisdiction over claims against insurance carriers. As the Court correctly notes, *ante*, at 9–10, that statute was a response to the dramatic increase in the workload of the Federal District Courts in Louisiana resulting from the enactment of the Louisiana statute authorizing injured parties to bring direct actions against insurance companies without joining the alleged tortfeasors as parties.[3] The legislative history of that statute does not mention workers' compensation cases. The question whether the 1964 statute ousted the federal courts in Texas of jurisdiction over the remaining half of their workers' compensation docket was, therefore, not answered by legislative history.

The United States Court of Appeals for the Fifth Circuit has, however, answered that question in two steps. In 1974, in *Hernandez* v. *Travelers Ins. Co.*, 489 F. 2d 721, cert. denied, 419 U. S. 844 (1974), the Court of Appeals held that a workers' compensation policy is a "policy or contract of liability insurance" and that an action against an insurer on such a policy is a "direct action" within the meaning of 28 U. S. C. § 1332(c) (1982 ed.).[4] That holding took care of over 95 per-

---

[2] "Sec. 5. (a) Section 1445 of title 28 of the United States Code is amended by adding at the end thereof a new paragraph as follows:

"'(c) A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.'" 72 Stat. 415.

[3] See H. R. Rep. No. 1229, 88th Cong., 2d Sess., 4–5 (1964).

[4] That section provides:

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of busi-

cent of the post-1958 residue of Texas workers' compensation cases. In 1977, the Fifth Circuit took the second step to dispose of the remaining handful of cases—those originally filed in federal court by insurance companies. In *Campbell* v. *Insurance Co. of North America*, 552 F. 2d 604 (1977), the court held that the specific characteristics of the Texas workers' compensation statute made it appropriate to treat a federal action that had been filed by the insurance carrier as an action "against the insurer" within the meaning of the proviso to § 1332(c).

Today the Court rejects the second, relatively unimportant, holding in *Campbell*, and leaves standing the decision in *Hernandez*. The net result of this case, then, is to preserve federal jurisdiction over the tiny fraction of Texas workers' compensation cases that are brought by insurance carriers and to leave untouched the interpretation of the statute governing the other 97½ percent. Since the *Hernandez* decision is consistent with the interpretation of the proviso to § 1332(c) that has been adopted in other Circuits, see *Aetna Casualty & Surety Ins. Co.* v. *Greene*, 606 F. 2d 123, 126 (CA6 1979), and since the question whether the case involves a "direct action" and a "policy of liability insurance" turns in large part on an understanding of specific features of the Texas statute, I agree with the Court's decision to leave that holding untouched. I disagree, however, with its disposition of the issue it does decide.

On the merits, three characteristics of the Texas scheme make it appropriate to characterize the judicial review of a compensation award as an action "against" the insurance carrier regardless of which party initiated the review proceed-

---

ness: *Provided further*, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business."

ing.   First, the underlying claim for compensation that is at issue from beginning to end is unquestionably a claim against the insurance company.   Second, the fact that as a matter of state law the burden of proof remains on the employee is of more importance in determining the true character of the judicial proceeding than the identity of the party who filed the initial pleading.[5]   Third, and perhaps of greatest importance, the question whether the matter in controversy is sufficient to sustain federal jurisdiction is determined by the magnitude of the employee's claim, rather than by the amount of the award that the insurance company challenges. *Horton* v. *Liberty Mutual Ins. Co.*, 367 U. S. 348 (1961).[6]

---

[5] "The specific question is this: Does an alignment of the parties in relation to their real interests in the 'matter in controversy' satisfy the settled requirements of diversity jurisdiction?

"As is true of many problems in the law, the answer is to be found not in legal learning but in the realities of the record.   Though variously expressed in the decisions, the governing principles are clear.   To sustain diversity jurisdiction there must exist an 'actual,' *Helm* v. *Zarecor*, 222 U. S. 32, 36, 'substantial,' *Niles-Bement-Pond Co.* v. *Iron Moulders Union*, 254 U. S. 77, 81, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side.   *Strawbridge* v. *Curtiss*, 3 Cranch 267. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants.   It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' *Dawson* v. *Columbia Trust Co.*, 197 U. S. 178, 180." *Indianapolis* v. *Chase National Bank*, 314 U. S. 63, 69 (1941).

[6] As Judge Tuttle has explained:

"The Texas Compensation Law permits any interested party, including, of course, the insurer, to bring suit to 'set aside' the award of the Industrial Accident Board.   As noted previously, however, once such an action is commenced, the award becomes an absolute nullity under the Texas statute.   The filing of the suit, in and of itself, abrogates the award, and this is so even if a voluntary nonsuit is taken and the case dismissed without judgment on the merits.   The insurer is under no obligation to prove that the award was erroneous, even though the insurer's action is designated as an action to 'set aside' the award.   To the contrary, once an action such as this

Arguably, these three features of the Texas scheme are not sufficient to overcome the Court's literal approach to the art of statutory interpretation. They are, however, buttressed by three additional considerations that are persuasive to me. First, since the resolution of the issue depends largely on a correct understanding of a state statute, I believe we should give deference to the Court of Appeals' evaluation of the characteristics of the Texas procedures. Cf. *Bishop* v. *Wood*, 426 U. S. 341, 346 (1976). Second, that court's interpretation of the law provides evenhanded treatment to both parties, whereas the opinion this Court expresses today gives favored treatment to the insurance carriers;[7] it seems un-

---

is filed, a trial *de novo* is conducted, and the burden is on the *insured* (here, the defendant) to plead and prove whether and to what extent he is entitled to compensation. Thus, when the insurer institutes such an action, it is a 'plaintiff' in name only. The filing of suit by the insurer is nothing more than a notice to the insured to come into court and prove his claim.

"Thus it is that the amount actually in controversy in the action cannot be determined until the insured responds to this notice by filing a claim for compensation against the insurer. The insured's 'counterclaim' is, for all intents and purposes, the *only* claim involved in the action." *Hardware Mutual Casualty Co.* v. *McIntyre*, 304 F. 2d 566, 570 (CA5) (citations omitted), cert. denied, 371 U. S. 878 (1962).

[7] In his dissenting opinion in *Horton* v. *Liberty Mutual Ins. Co.*, 367 U. S. 348, 362–363 (1961), Justice Clark, who was also familiar with Texas procedures, observed:

"Moreover, the Senate Report expressed concern for the problems of the injured employee in federal court,

" '[S]ome of these State [workmen's compensation] statutes limit the venue to the place where the accident occurred or to the district of the workman's residence. When removed to the Federal court the venue provisions of the State statute cannot be applied. Very often cases removed to the Federal courts require the workman to travel long distances and to bring his witnesses at great expense. This places an undue burden upon the workman and very often the workman settles his claim because he cannot afford the luxury of a trial in Federal court.' S. Rep. No. 1830, 85th Cong., 2d Sess. 9.

"While 28 U. S. C. § 1332 does not specifically prohibit the filing of original workmen's compensation cases, a clearer expression of congressional dis-

18

likely that Congress intended the 1964 statute to have that kind of discriminatory impact. Third, the Court's construction of the provision ignores the dominant policy that should be heeded whenever we construe statutes governing federal diversity jurisdiction.

"These requirements, however technical seeming, must be viewed in the perspective of the constitutional limitations upon the judicial power of the federal courts, and of the Judiciary Acts in defining the authority of the federal courts when they sit, in effect, as state courts. See *Madisonville Traction Co.* v. *Mining Co.*, 196 U. S. 239, 255, and *Ex parte Schollenberger*, 96 U. S. 369, 377. The dominant note in the successive enactments of Congress relating to diversity jurisdiction, is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts,' in order to keep them free for their distinctive federal business. See Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 Harv. L. Rev. 483, 510; *Shamrock Oil Corp.* v. *Sheets*, 313 U. S. 100, 108–09; *Healy* v. *Ratta*, 292 U. S. 263, 270." *Indianapolis* v. *Chase National Bank*, 314 U. S. 63, 76 (1941).

---

like for saddling federal courts with such cases could hardly be imagined. We should, therefore, give effect to this policy wherever possible. Not only does the decision today fail to do this, but the Court goes out of its way to defeat the congressional intent. The statement that 'the workman has the option to file his case in either the Federal or the State court,' S. Rep. No. 1830, 85th Cong., 2d Sess. 9, is no longer correct. It is now an unequal race to the courthouse door—a race which the insurers will invariably win, since they have resident counsel in Austin (the location of the Texas Industrial Accident Board) who quickly secure news of Board awards and are thus enabled to 'beat' the workman in the choice of forums. Thus, the Court—contrary to the specifically expressed intention of the Congress—grants the insurance companies the option of going into federal court, with all its attendant difficulties to the already overburdened federal judiciary and the impecunious workman." ·

Finally, I must add a word about the unwisdom in granting certiorari to decide the merits of this case. The law had been settled in the Fifth Circuit in a perfectly sound and sensible way for over a decade when at least four Members of this Court voted to hear this case. Measured by 1957 standards, the question we decide today affects only 25 cases out of a total that then amounted to 2,147. Since the jurisdictional amount has since been increased from $3,000 to $50,000, the number of cases actually affected by today's decision may be even smaller.[8] Thus, although it is true as the Court observes that Congress has the power to amend the statute to eliminate its disparate consequences, *ante*, at 12–13, it is hardly likely to consider such action worth the effort. The most significant aspect of today's decision is the revelatory light it sheds on the way we manage our scarce resources.

I respectfully dissent.

---

[8] It is true that the Court of Appeals for the Sixth Circuit had held that a declaratory judgment action brought by an insurance company to construe a workers' compensation policy is not an action "against" the company within the meaning of the proviso, *Aetna Casualty & Surety Ins. Co. v. Greene*, 606 F. 2d 123 (1979), and that case might at first blush have been thought to create a conflict with the Fifth Circuit's decision in *Campbell v. Insurance Co. of North America*, 552 F. 2d 604 (1977). That apparent conflict, however, was wholly illusory because the special characteristics of the Texas workers' compensation statute were not replicated in Tennessee. Indeed, in later cases the Fifth Circuit has itself recognized that the holding in *Campbell* is not applicable to actions filed by insurance companies seeking constructions of policies covering liability for personal injury. See *Evanston Ins. Co. v. Jimco, Inc.*, 844 F. 2d 1185, 1189 (1988); *Dairyland Ins. Co. v. Makover*, 654 F. 2d 1120, 1124–1125 (1981).