**TOKYO MARINE AND FIRE INSURANCE, CO., LTD., Plaintiff,**

v.

**PEREZ & CIA de PUERTO RICO, INC., et al., Defendants.**

**Civ. No. 94–1523(SEC).**

United States District Court, D. Puerto Rico.

July 3, 1995.

---

Antonio M. Bird, Jr., Bird, Bird & Hestres, San Juan, PR, for plaintiff.

Keith A. Graffam, Cordero, Miranda & Pinto, San Juan, PR, Jane A. Becker–Whitaker, Troncoso & Becker, San Juan, PR, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Plaintiff Tokyo Marine and Fire Insurance, Co., Ltd. ("Tokyo Marine") brought this action against Pérez & Cía de Puerto Rico, Inc. ("Pérez & Cía") and its unknown insurers, seeking compensation for the damages suffered by several vehicles discharged at Pier 15 in San Juan, Puerto Rico. At all relevant times, plaintiff served as the marine underwriter for Mitsubishi Motor Sales of Caribbean, Inc. ("Mitsubishi"), who was in turn the consignee of the vehicles subject of this lawsuit. In the performance of its obligations as Mitsubishi's marine underwriter, Tokyo Marine indemnified Mitsubishi for the over spray damages suffered by a number of these automobiles while in temporary storage on the dock at Pier 15, which caused paint specks and other substances to adhere to the glass and painted surfaces of the vehicles. Upon indemnifying Mitsubishi, Tokyo Marine acquired the rights to claim the value of the over spray damages by subrogation. Tokyo Marine relies on and invokes said subrogation rights in presenting this complaint. For its part, defendant Pérez & Cía is a Puerto

Rico corporation which operates a shipyard facility in which vessel painting and refurbishing operations took place at the time the allegedly tortious act occurred.

Plaintiff asserts two alternative sources of federal jurisdiction over its claims, both of which are contested by defendant. First, plaintiff invokes the admiralty jurisdiction of this Court under the provisions of 28 U.S.C. § 1333, claiming that the conduct of defendant Pérez & Cía constitutes a maritime tort. In addition, plaintiff claims diversity jurisdiction under 28 U.S.C. § 1332, as Tokyo Marine is a foreign corporation organized pursuant to the laws of Japan, with its principal place of business located in Japan, while Pérez & Cía is organized pursuant to the laws of the Commonwealth of Puerto Rico, with its principal place of business also in Puerto Rico.

### ADMIRALTY JURISDICTION

In its motion to dismiss (docket # 22), Pérez & Cía challenges plaintiff's description of events as a maritime tort, characterizing it as an untenable attempt to improperly extend the admiralty jurisdiction of this Court without regard to the requisite conditions of both location and connection with maritime activity, set forth in a trilogy of cases decided by the U.S. Supreme Court in recent years. See *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). See also, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company,* —— U.S. ——, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). In response, plaintiff asserts that maritime jurisdiction exists over its claims by virtue of the Extension of Admiralty Jurisdiction Act ("the Act"),[1] 46 U.S.C. § 740, rather than by application of the "traditional test" for admiralty tort jurisdiction as established by the above cited cases.

■ The purpose of the Extension of Admiralty Jurisdiction Act was to end concern over the sometimes confusing line between land and water, by investing admiralty with jurisdiction over all cases where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land. See *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company,* —— U.S. at ——, 115 S.Ct. at 1047. In *Great Lakes,* the U.S. Supreme Court reaffirmed the continued validity of the admiralty tort jurisdiction test as established by the above cited trilogy of cases, even where maritime jurisdiction is predicated on the Extension of Admiralty Jurisdiction Act. The Court expressly held that a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333 over a tort claim must satisfy conditions both of location and of connection with maritime activity: "A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* at ——, 115 S.Ct. at 1048. On the other hand, the connection test raises two issues. First, a court "must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce." *Id.* Second, "a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" *Id.*

In support of its position, plaintiff offers several examples of cases where, pursuant to the provisions of the Act, damage to shore structures and injuries on land have been held to be within the scope of admiralty jurisdiction even though there is no physical impact by the vessel. In this line of cases, actions arising from smoke damage to automobiles on a dock as a result of vessel emissions, and actions for damages caused by dust blown from vessels have been held to be properly cognizable in admiralty. See *Nissan Motor Corp. v. Maryland Shipbuilding and Drydock Company,* 544 F.Supp. 1104 (D.Md.1982), *aff'd,* 742 F.2d 1449 (4th Cir.

---

**1.** The Act provides in pertinent part that: "[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land."

1984). Admiralty jurisdiction has also been extended to include cases involving shore damage due to the discharge of pollution from a vessel. See *In re Oil Spill by the Amoco Cádiz,* 699 F.2d 909 (7th Cir.1983); *State of California By and Through Department of Fish & Game v. S.S. Bournemouth,* 307 F.Supp. 922 (C.D.Cal.1969). Significantly, however, as plaintiff itself acknowledges, these cases hinged upon a finding that the damages were proximately caused by a vessel on navigable waters, its master or crew.

The *Nissan* case cited by plaintiff is of particular interest, as it involves a factual scenario closely akin to the present controversy. In *Nissan,* the automobile company brought an action in admiralty against the shipbuilding company to recover for damages allegedly caused to its vehicles by smoke and spray paint emanating from the shipbuilding company's property adjacent to the automobile company's property. Faced with the question whether the court would be hearing the case under its admiralty or diversity jurisdiction, the district judge concluded that admiralty jurisdiction was present under the Extension of Admiralty Jurisdiction Act, as any spray paint damage sustained by Nissan's vehicles had been caused by spray painting operations conducted from a floating crane barge owned by defendant, or by spray painting performed on vessels located on navigable waters. *Id.* at 1107–1108. Clearly, as the court's opinion expressly illustrates, the district judge felt that the location requisite of the Extension of Admiralty Jurisdiction Act, namely that the damage be caused by a *vessel on navigable water,* was satisfied by the fact that the damage was proximately caused by a *floating barge* or by work performed on *vessels located on navigable waters. Id.* at 1108.

■ In contrast, the allegations in plaintiff's complaint do not support its argument that the Extension of Admiralty Jurisdiction Act provides grounds for jurisdiction in this case. For example, no allegations are made that the spray painting operations of defendant Pérez & Cía are carried out from a barge or otherwise performed on vessels located on navigable waters as in *Nissan.* In fact, the third amended complaint makes it patently clear that the vehicles in question were damaged *within* the premises of the shipyard owned and operated by defendant. The instant controversy is similarly distinguishable from the other two cases cited by plaintiff in its opposition to the motion to dismiss, as the damage here was allegedly caused by the spray paint presumably being *applied to* ships in repair, rather than by oil, smoke or other polluting substance directly emanating *from* the ship. In these circumstances, it cannot be said that the over spray damages were *caused* by a vessel, even assuming *arguendo* the existence, somehow related, of a vessel located on navigable waters. Accordingly, this Court finds that upon a straightforward application of the test for admiralty tort jurisdiction, as most recently explained in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Company,* — U.S. ——, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), and in light of the plain language and purpose of the 1948 Extension of Admiralty Jurisdiction . Act, maritime jurisdiction is lacking in this case. We therefore proceed to a discussion on the merits of the parties' contradictory contentions with regard to the existence of diversity jurisdiction in this case.

### DIVERSITY JURISDICTION

■ Federal courts enjoy diversity jurisdiction under 28 U.S.C. § 1332 over claims in excess of $50,000 when complete diversity of citizenship exists between the parties. *Sweeney v. Westvaco Co.,* 926 F.2d 29, 41 (1st Cir.1991), *cert. denied,* 502 U.S. 899, 112 S.Ct. 274, 116 L.Ed.2d 226 (1991); *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Diversity jurisdiction exists between "citizens of a state and citizens or subjects of a foreign state" provided of course, that the jurisdictional amount requirement is also met. 28 U.S.C. § 1332(a)(2). Whenever the defendant properly challenges plaintiffs' allegations of jurisdictional facts, however, the plaintiffs bear the burden of supporting the allegations with competent proof. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

Originally, in its motion to dismiss, defendant Pérez & Cía only raised a challenge to the legal sufficiency of plaintiff's jurisdictional statement in the second amended complaint, which merely averred that Tokyo Marine was incorporated in a state other than Puerto Rico, with its principal place of business also in a state other than Puerto Rico. Subsequently, the Court granted plaintiff's request for leave to amend the complaint, so as to afford the plaintiff an opportunity to address the pleading deficiencies identified by defendant, and correct the complaint's jurisdictional allegation accordingly. As a result, the third amended complaint now contains a modified jurisdictional allegation specifically describing Tokyo Marine as a foreign corporation organized pursuant to the laws of Japan, with its principal place of business in Japan. Consequently, the Court finds that the complaint properly invokes the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a)(2).

■ Our inquiry is not over however, as it appears that, in a change of tack, defendant in its Reply to Plaintiff's Opposition to the Motion to Dismiss now claims that under 28 U.S.C. § 1332(c)(1), in addition to its place of incorporation and its principal place of business, Tokyo Marine must be deemed a citizen of the same state as its insured Mitsubishi Motor Sales of Caribbean, Inc., namely Puerto Rico.[2] It follows then, according to defendant's argument, that complete diversity is lacking as both plaintiff and defendant are considered to be citizens of Puerto Rico, thereby depriving the Court of subject matter jurisdiction. Defendant's argument falls short for the following reasons:

First, the U.S. Supreme Court squarely faced the issue in *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989), in the context of a suit brought in federal court by an Illinois insurer appealing a worker's compensation award granted by the Texas Industrial Accident Board. In that case, Northbrook National Insurance Company ("Northbrook"), an Illinois corporation with its principal place of business in that state, filed suit against Larry Brewer, a Texas citizen, in federal district court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. The district court dismissed for lack of subject matter jurisdiction, holding that Fifth Circuit precedent required it to apply the direct action proviso of the diversity statute. *See* note 2, *supra*. The district court therefore attributed the insured's Texas citizenship to Northbrook, eliminating diversity between Northbrook and Brewer. After the Court of Appeals affirmed, the U.S. Supreme Court on certiorari reversed and remanded, holding that the direct action proviso was not applicable because Northbrook's suit was an action by, not against, an insurer. *Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. at 9, 110 S.Ct. at 299. The Court reasoned that not only was the statute's language clear in this respect, but that, in addition, its legislative history reinforced the Court's straightforward interpretation of Congress' "pellucid language". *Id.*

In its review of the statute's legislative history, the Court delineated the historical context in which it was drafted, recounting how Congress added the proviso to § 1332(c) in 1964 in response to a sharp increase in the caseload of federal district courts in Louisiana, resulting largely from the state's adoption of a direct action statute. *Id.* The Louisiana statute permitted an injured party to sue a tortfeasor's insurer directly without joining the tortfeasor as a defendant. Its effect was to create diversity jurisdiction in cases where both the tortfeasor and the injured party were Louisiana citizens, but the tortfeasor's insurer was considered a citizen of another state. In the belief that such suits did not come within the spirit or the intent of the basic purpose of diversity jurisdiction, Congress enacted the proviso to

---

**2.** 28 U.S.C. § 1332(c)(1) provides in part that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business."

eliminate from the diversity jurisdiction of the U.S. district courts tort claims in which both parties are local residents but which, under a local direct action statute, may be brought directly against a foreign insurance carrier without joining the local tortfeasor as a defendant. *Id.* at 10, 110 S.Ct. at 299; S.Rep. No. 1308, 88th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1964, p. 2778–2779. Significantly, the Court noted the fact that nowhere in the legislative history did Congress express any concern about diversity actions filed *by* insurance carriers. *Id.* The Court then rejected the analytical approach taken by the Fifth Circuit Court of Appeals, and expressly limited the application of the proviso to actions *against* insurers. *Id.* at 13, 110 S.Ct. at 301.

The above cited U.S. Supreme Court precedent is, of course, binding authority on this Court. Consequently, in accordance with the U.S. Supreme Court's holding in *Northbrook,* and in view of the clear language and purpose of the direct action proviso in § 1332(c)(1), we find that the jurisdiction of this Court based on diversity of citizenship between the parties was properly invoked by plaintiff in this case, and therefore defendant's motion to dismiss, inasmuch as it is based on a purported lack of subject matter jurisdiction, must be denied.

WHEREFORE, for the reasons stated above, defendant's motion to dismiss (docket # 22) is DENIED. The Court will entertain this case under its diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(2).

**SO ORDERED.**