**Ricky Thomas DAVIS, Jr., Plaintiff,**

v.

**Cornelius Harlan CAREY,
Judgment Defendant.**

**Allstate Insurance Company,
Defendants.**

**No. IP 00–1762–C–T/G.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 19, 2001.

Frederick R. Hovde, Hovde Law Firm, Indianapolis, IN, for Plaintiff.

Jeffrey Allen Cooke, The Cook Law Office, Lafayeytte, IN, John W. Hammel, Yarling & Robinson, Mark R.. Smith, Smith Fisher & Maas, Indianapolis, IN, for Defendants.

### Entry on Plaintiff's Motion To Remand

TINDER, District Judge.

Garnishee Defendant Allstate Insurance Company removed this action from state court, invoking the court's diversity jurisdiction. Plaintiff Ricky Thomas Davis, Jr., now moves to remand, contending the court lacks jurisdiction because of a lack of complete diversity. Having considered the motion, the court rules as follows.

## I. Background

On June 4, 1998, Plaintiff Ricky Thomas Davis, Jr., commenced this action in the Franklin Circuit Court against Defendant Cornelius Harlan Carey, Cause No. 24C01–9806–CT–145. Both Davis and Carey are citizens of the State of Indiana. Davis obtained a default judgment against Carey in the amount of $1,419,777.12. Allstate Insurance Company ("Allstate") was added as a garnishee defendant on October 25, 2000, when Plaintiff Davis filed his Petition for Proceedings Supplemental to Execution to collect from Allstate the judgment obtained against Carey. On November 13, 2000, Allstate filed its Notice of Removal, asserting this court's diversity jurisdiction.

## II. Discussion

Plaintiff Davis moves to remand, contending that the court lacks subject matter jurisdiction over this action because there is a lack of complete diversity. He first asserts that he and Carey are citizens of the same state. He next argues that if Carey were realigned as a Plaintiff, then the action is a "direct action" under 28 U.S.C. § 1332(c) against Carey's insurer Allstate, and Allstate therefore is deemed a citizen of the state of which Carey is a citizen, defeating diversity. Allstate opposes the motion to remand and argues that the court may properly exercise jurisdiction over this action because Carey is a nominal party and should be realigned with Davis. Allstate also argues that this garnishment action is not a "direct action" within the meaning of § 1332(c).

 A case properly may be removed to federal court from state court if it might have been brought originally in federal court. *See Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993). A removed case must be remanded if the district court lacks subject matter jurisdiction. *See id.* at 366.

 When jurisdiction is based on diversity of citizenship, the court may, if proper, realign the parties to conform to their true interests in the action. *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941); *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir.1981). "Realignment is proper when the court finds that no actual, substantial controversy exists between parties on one side of the dispute and their named opponents. . . ." *Am. Motorists*, 657 F.2d at 149. In deciding whether there is an actual, substantial controversy, the court may look beyond the pleadings. *Fid. & Deposit Co. v. City of Sheboygan Falls*, 713 F.2d 1261, 1264 (7th Cir.1983); *Am. Motorists*, 657 F.2d at 149. The decision must be based on the facts as they existed at the time the action was commenced. *See Am. Motorists*, 657 F.2d at 149.

 In arguing that his interests and that of Carey are adverse such that realignment would be improper, Davis relies on two things: Carey's potential personal liability on the judgment Davis has against him and Allstate's counsel's indication that Allstate intends to move to set aside the default judgment against Carey. Neither serves as a basis for concluding that the interests of Davis and Carey in this garnishment action are adverse. Even though Carey is potentially liable for a substantial part of the judgment against him, it is in his interest to have as much of that judgment satisfied by the proceeds from the Allstate policy as possible. As for Allstate's intention to seek to have the default judgment set aside, the decision whether there is an actual, substantial controversy between Davis and Carey is to be based on the facts as they existed at the time this garnishment action was commenced, *see Am. Motorists*, 657 F.2d at

149, not on Allstate's expressed intent to take some future action.

The court finds that no actual, substantial controversy exists between Davis and Carey in this action. Thus, Carey is properly realigned as a Plaintiff. Davis' garnishment action seeks to recover the proceeds of the Allstate policy issued to Carey's mother to satisfy Davis' judgment against Carey. Though the judgment exceeds the limits of the insurance, Carey's interests are aligned with Davis' interests. It certainly is in Carey's interest to have Allstate pay on the policy, thus reducing Carey's personal liability. Other cases have reached similar conclusions. *See Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 788 (7th Cir.1992) (concluding that insured and insured's victims' interests should be aligned in action by plaintiff insurer seeking declaratory judgment that it had no duty to defend or indemnify the insured or the insured's victims); *Randolph v. Employers Mut. Liab. Ins. Co.*, 260 F.2d 461, 464 (8th Cir.1958) (concluding insured should be aligned as a plaintiff because "it would be to [his] interest to have the judgment against him satisfied by his insurer."); *Boston v. Titan Indem. Co.*, 34 F.Supp.2d 419, 421–22 (N.D.Miss.1999) (stating in garnishment proceeding against county's liability insurer to collect judgment against county that "[s]ince garnishment of insurance proceeds would be in the [insured] county's interest, the court further finds that the county should be realigned as a party plaintiff for purposes of determining diversity of citizenship."). Because Carey properly should be realigned as a Plaintiff, the fact that he and Davis share citizenship in the same state does not defeat diversity jurisdiction.

■ Davis contends that if Carey were realigned, then his garnishment petition would be considered a direct action against

Allstate and, consequently, Allstate would be deemed a citizen of the state in which Carey is a citizen. The statute which grants federal courts diversity jurisdiction provides that a corporation is deemed "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The statute contains the following exception:

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business. . . .

*Id.* The real issue in this case is whether Plaintiff's Motion For Proceedings Supplemental is a "direct action" within the meaning of that term as used in 28 U.S.C. § 1332(c).

■ The court first notes that garnishment actions under Indiana law may be removed from state court. *See, e.g., Harding Hosp. v. Sovchen*, 868 F.Supp. 1074, 1078 (S.D.Ind.1994) (holding garnishment proceeding under Indiana law was a removable independent "civil action" under § 1441); *Wausau Ins. Cos. v. Koal Indus. Int'l, Inc.*, 811 F.Supp. 399, 400 (S.D.Ind. 1991) (same).

Davis relies on the decision in *Prendergast v. Alliance General Insurance Company*, 921 F.Supp. 653 (E.D.Mo.1996), for the proposition that a garnishment action against an insurer is a "direct action." The *Prendergast* plaintiffs brought an action to collect a judgment they had obtained in Missouri state court against the defendant's insureds who were Missouri citizens. The defendant was an Illinois

corporation with its principal place of business in Illinois. *See id.* at 654–55. The court found that Missouri's garnishment statute authorizing a cause of action against an insurance company to collect insurance proceeds in satisfaction of a final judgment obtained against its insured was a "direct action" under § 1332(c). *Id.* at 655. The court noted that § 1332(c) was amended in response to Louisiana's direct action statute, which allowed an injured party to sue a tortfeasor's insurer directly without joining the tortfeasor as a defendant and which had the effect of "creat[ing] diversity jurisdiction in cases in which both the tortfeasor and the injured party were residents of Louisiana, but the tortfeasor's insurer was considered a resident of another state." *Prendergast,* 921 F.Supp. at 655 (quoting *Northbrook Nat'l Ins. Co. v. Brewer,* 493 U.S. 6, 10, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989)). The court further noted that "Congress amended the statute because such a result was not within the 'spirit or intent' of diversity jurisdiction." *Id.* The court then reasoned that policy considerations counseled in favor of finding the action to be a direct action:

> The defendant insurance company … is not being sued for any action it took against the plaintiffs, but is simply being sued in an attempt to collect a judgment that has already been entered against its insured, a Missouri citizen…. Missouri's equitable garnishment statute essentially does in two steps what the Louisiana statute that lead [sic] to the change in § 1332(c)(1) did in one step, and provides to the suing plaintiff the same remedy that a direct action against the insurance company would have provided, were that allowed under Missouri law.

*Prendergast,* 921 F.Supp. at 655.

In arguing this action is not a direct action, Allstate relies on the decisions of *Searles v. Cincinnati Insurance Company,* 998 F.2d 728 (9th Cir.1993), which held that an insured's bad faith action against his insurer was not a "direct action" within the meaning of § 1332(c)(1), *id.* at 728, and *Rosa v. Allstate Insurance Company,* 981 F.2d 669 (2nd Cir.1992), which held that an action by an injured automobile passenger against the automobile owner's no-fault insurer was not a "direct action" within the meaning of § 1332(c). *Id.* at 672–73, 679. Neither of these cases involves an action by an injured party against a tortfeasor's insurer subsequent to the injured party's obtaining a judgment against the insured. However, the reasoning of both *Searles* and *Rosa* is not limited to those particular factual circumstances. The reasoning of these courts has broader implications. *Searles* reiterated the Ninth Circuit's conclusion in *Beckham v. Safeco Ins. Co.,* 691 F.2d 898 (9th Cir.1982), that § 1332(c)(1) "applies to 'those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him….'" *Searles,* 998 F.2d at 729 (quoting *Beckham,* 691 F.2d at 902). The Ninth Circuit continued: "Thus, 'unless the cause of action urged against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured, the action is not a direct action.'" *Id.* (quoting *Beckham,* 691 F.2d at 901–02). Both the Ninth and Second Circuits relied on the legislative history in concluding that the term "direct action" in § 1332(c)(1) should be given a narrow construction. *See Searles,* 998 F.2d at 729–30 (explaining that Congress enacted the provision in response to an increase caseload in federal courts in Louisiana resulting from the state's direct action statute and to eliminate those cases in which both parties are local residents but suit could be

brought under a state "direct action" statute against a foreign insurance carrier without joining the tortfeasor as a defendant); *Rosa*, 981 F.2d at 674 (noting Congress enacted the "direct action" provision to eliminate diversity jurisdiction over tort claims in which both parties are local residents, but which may be brought under a state "direct action" statute directly against a foreign insurance carrier without joining the local tortfeasor as a defendant).

The First Circuit has adopted the same view of § 1332(c), *see White v. U.S. Fid. & Guar. Co.*, 356 F.2d 746, 747–48 (1st Cir. 1966) (relying on legislative history that "direct action" refers to Louisiana and Wisconsin statutes which allow an injured party to pursue an action against the tortfeasor's insurer alone and finding district court correctly concluded that § 1332(c) "refers only to cases brought by an alleged victim of a tort under a 'direct action' statute against the liability insurer of the alleged tort-feasor");[1] *see also Estate of Zeiler v. Prudential Ins. Co.*, 570 F.Supp. 627, 628 (N.D.Ill.1983) (stating "Section 1332(c) was intended to deal with the tort-claim 'direct action' statutes (initially in Louisiana and Wisconsin) that were viewed as putting an undue burden on the federal courts' diversity jurisdiction"). And, in an unpublished opinion,[2] the Sixth Circuit construes "direct action" to mean "an action under applicable state law [which] may be brought directly against the insur-

er by the tort claimant prior to entry of any judgment against the alleged tortfeasor." *Stockton v. Gen. Acc. Ins. Co.*, No. 89–5492, 1990 WL 20477, at *3, 897 F.2d 530 (6th Cir. Mar. 6, 1990);[3] *cf. Henderson v. Selective Ins. Co.*, 369 F.2d 143, 149 (6th Cir.1966) (stating the "direct action" provision was enacted to address the affects of the "direct action" statutes in Wisconsin and Louisiana).

The Supreme Court's decision in *Northbrook National Insurance Company v. Brewer*, 493 U.S. 6, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989), lends support to the view that the garnishment proceeding against Allstate is not a "direct action" within the meaning of § 1332(c). In *Northbrook*, an insurer brought an action against an employee challenging an award of workers' compensation benefits. *Id.* at 7, 110 S.Ct. 297. The Court declined to address whether "direct action" is a suit in which "the injured party neither joins nor first obtains a judgment against the legally responsible party". *Id.* at 9 n. 1, 110 S.Ct. 297. But, the Court relying on the statute's legislative history gave "direct action" a narrow construction and held that an insurer's action against an insured does not fall within the meaning of "direct action" in § 1332(c)(1). *Id.* at 9, 12–13, 110 S.Ct. 297.

 The legislative history reveals the Congressional intent and purpose behind enactment of the "direct action" provision.

---

1. *White* was a declaratory judgment action brought by an insured against the insurance company and insured's judgment creditor seeking a declaration that an insurance policy was in effect at time of accident. *Id.* at 747.

2. Though citation to unpublished decisions in the Sixth Circuit is disfavored, the circuit rules do not prohibit such citation where the "unpublished disposition has precedential value in relation to a material issue in a case, and ... there is no published opinion that would serve as well". 6th CIR. R. 28(g).

3. In *Stockton*, the plaintiffs brought a garnishment action against an insurance company. One of the plaintiffs had been injured while riding in an ambulance operated an ambulance service. The plaintiffs sued the ambulance service and obtained a default judgment. The plaintiffs then brought an action against the ambulance service's insurer, which they described as a "garnishment action" *Id.* at *1.

The Senate Report accompanying the proposed amendment clearly states the purpose of the provision as follows:

> The purpose of the proposed legislation is to amend section 1332(c) of title 28, United States Code, so as to eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant.

S.REP. No. 88–1308, at 1 (1964), *reprinted in* 1964 U.S.C.C.A.N. 2778, 2778–79. Such "direct action" statutes had been enacted in Louisiana and Wisconsin. *Id.* at 2, *reprinted in* 1964 U.S.C.C.A.N. at 2779. These statutes allowed an injured party to sue the tortfeasor's insurer directly without joining the tortfeasor as a defendant, *see* LA.REV.STAT. ANN. § 22:655; WIS. STAT. § 632.24, thus creating diversity jurisdiction where the injured party and tortfeasor were residents of the same state but the tortfeasor's insurer was a resident of another state. Congress found that such suits did "not come within the spirit or the intent of the basic purpose of the diversity jurisdiction of the Federal judicial system." S. REP. No. 88–1308, at 7, *reprinted in* 1964 U.S.C.C.A.N. at 2784. As a result of the direct action statute, a large number of cases were filed in federal district courts in Louisiana statute, congesting the courts' dockets.[4] This effect was believed to be indicative of "what might be expected to occur in the Federal Courts throughout the country if each of the States were to enact legislation similar to the Louisiana statute." *Id.* The report further indicates that the amendment "would add a proviso to subsection (c) of section 1332 to provide that in any civil action directly against the insurer of a policy or contract of liability insurance, to which the insured is not joined as a party-defendant, then the insurer shall be deemed a Citizen of the State of which the insured is a citizen. . . ." *Id.* at 2, *reprinted in* 1964 U.S.C.C.A.N. at 2779. Thus, the legislative history reveals that the "direct action" provision was intended to respond to an increase in the caseload of federal district courts in Louisiana which resulted from the state's "direct action" statute. The legislative history does not express any intent to respond to an increase in the federal dockets caused by garnishment proceedings in Louisiana or Wisconsin[5] or in any other state.

To be sure, recent district court decisions directly addressing whether an injured party's action against a tortfeasor's insurer seeking to satisfy a judgment obtained against the insured comes within the meaning of "direct action" in § 1332(c) have held that such an action is a "direct action." *See Reko v. Creative Promotions, Inc.,* 70 F.Supp.2d 1005, 1008 (D.Minn. 1999) (holding Minnesota garnishment proceeding allowing judgment creditors to commence action against insurer to establish liability coverage and collect judgment is direct action under § 1332(c));[6] *Boston v. Titan Indem. Co.,* 34 F.Supp.2d 419,

---

4. The federal district courts in Wisconsin, however, did not experience a similar increased case load.

5. Both Louisiana and Wisconsin did provide for garnishment proceedings, however. *See* LA.REV.STAT. ANN. § 3913 *et seq.;* WIS. STAT. ANN. § 267 *et seq.*

6. This decision affirmed the decision of the magistrate judge that the Minnesota garnishment statute allowing a judgment creditor to sue an insurer is a "direct action" under § 1332(c). *See Reko v. Creative Promotions, Inc.,* 70 F.Supp.2d 998, 1003–04 (D.Minn. 1999).

422–24 (N.D.Miss.1999) (holding Mississippi garnishment statute allowing the issuance of a writ of garnishment on a suggestion for garnishment filed by judgment creditor is a direct action under § 1332(c)); *Sherman v. Pa. Lumbermen's Mut. Ins. Co.*, 21 F.Supp.2d 543, 545 (D.Md.1998) (holding Maryland statute allowing judgment creditors to sue judgment debtor's liability insurer to recover judgment against debtor is direct action); *Prendergast*, 921 F.Supp. at 655 (holding action under Missouri's equitable garnishment statute is direct action). The undersigned, however, believes that these district court decisions impermissibly expand the meaning of "direct action" beyond that intended by Congress and therefore were incorrectly decided. The Circuit Court decisions of *Searles, Rosa, White* and *Stockton* hold the better view.

■ Basic principles of statutory construction support this conclusion. When in interpreting a statute, courts begin with the statutory language. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); *Central States, Southeast & Southwest Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir.2001). Courts accord words and phrases their ordinary and natural meaning; avoid rendering them meaningless, redundant, or superfluous; view words not in isolation but in context; favor the more reasonable result; and avoid a construction contrary to clear statutory intent. *See, e.g., Matter of Merchants Grain, Inc. By & Through Mahern*, 93 F.3d 1347, 1353–54 (7th Cir.1996), *cert. denied sub nom. Mahern v. Adkins*, 519 U.S. 1111, 117 S.Ct. 948, 136 L.Ed.2d 837 (1997). The aforementioned district court decisions read the term "direct" out of § 1332(c) and render the term meaningless. "Direct" has to mean something, otherwise Congress would not have used it

in the statute. And, "direct" has to mean something other than "action"; to interpret "direct" to mean "action" renders the latter term redundant. Moreover, the legislative history is clear: Congress enacted the "direct action" provision in response to "direct action" statutes in the States of Louisiana and Wisconsin. The provision was not directed toward state law garnishment proceedings against insurers. At least one other district court has taken the view adopted by the undersigned. *See Cunningham v. State Farm Mut. Automobile Ins. Co.*, 297 F.Supp. 1138, 1139–40 (E.D.Tenn.1969) (holding that breach of implied contract action by injured party, who had sued insured in tort, against tortfeasor's liability insurer was not "direct action" within meaning of § 1332(c)).

■ Indiana law does not allow "direct actions" by injured parties against tortfeasors' insurers. Instead, an injured party must first obtain a judgment against a tortfeasor before seeking to collect that judgment against the tortfeasor's insurer through a garnishment proceeding, *see, e.g.,* IND.CODE §§ 34–25–3–1 to 34–25–3–15; IND.CODE § 34–25–3–7 ("The court shall not render final judgment against the garnishee until the action against the defendant has been determined."); IND.CODE § 34–25–3–14(a) ("If (1) judgment in the action is rendered for the plaintiff ... and (2) sufficient proof is made of the goods, chattels, rights, credits, money and effects in the possession of the garnishee; the court shall also give judgment in favor of the plaintiff ... and against the garnishee...."); IND. T.R. 69(E); *Evansville Garage Builders v. Shrode*, 720 N.E.2d 1273, 1278 (Ind.Ct.App.1999) ("A judgment in a proceeding supplemental is merely a continuation of the underlying claim on the merits."), *trans. denied; De Later v. Hudak*, 399 N.E.2d 832, 834–35 (Ind.Ct.App. 1980) (same). Unless the injured party

 

first obtains a judgment against the tortfeasor/insured, the injured party has no right of action against the tortfeasor's insurer. *See, e.g., Allstate Ins. Co. v. Morrison,* 146 Ind.App. 497, 256 N.E.2d 918, 925 (1970) ("Where plaintiff in an action for damages has recovered judgment, he may garnish defendant's claim under a policy insuring him against liability for damages of the kind recovered by plaintiff against him."). Thus, the injured party's action against the tortfeasor's insurer cannot be considered a direct action. It is an indirect action wholly dependent upon the injured party first obtaining a judgment against the tortfeasor. *See generally Allstate Ins. Co.,* 256 N.E.2d at 926 (recognizing the general rule that "garnishment is predicated on the existence of a cause of action by the debtor against the garnishee").

In addition, the nature of the liability sought to be imposed against Allstate cannot be imposed against Carey. Carey has already been found liable under a default judgment to Davis; Davis now seeks to hold Allstate liable under the terms of an insurance policy issued by Allstate. Furthermore, Carey has been joined as a party defendant in this action. Thus, by its plain terms, the "direct action" provision is inapplicable. *See* 28 U.S.C. § 1332(c)(1) ("[I]n any direct action against the insurer of a policy or contract of liability insurance ... *to which action the insured is not joined as a party-defendant.* ...") (emphasis added); *see also Searles,* 998 F.2d at 729 *Rosa,* 981 F.2d at 674. The realignment of Carey with Davis to conform to Carey's true interests in this action does not negate that undeniable fact. The court therefore concludes that the garnishment proceedings against Allstate do not fall within the meaning of "direct action" under § 1332(c)(1). Removal was thus proper and the motion to remand should be denied.

### III. Conclusion

The court finds that the garnishment action against Allstate is not a "direct action" within the meaning of § 1332(c). Therefore, the court may exercise subject matter jurisdiction and removal was not improper. Davis' motion for remand is **DENIED**. Carey's motion to vacate default judgment is not yet fully briefed and will therefore be decided in a separate entry. A scheduling conference will be held to set a discovery and briefing schedule on that motion.